# Illinois Official Reports

## Appellate Court

---

### *Silverberg v. Haji*, 2015 IL App (1st) 141321

---

| | |
|---|---|
| Appellate Court Caption | JOE SILVERBERG, Plaintiff-Appellant, v. MOHAMED J. HAJI, Defendant-Appellee (Mohamed J. Haji, as Agent of Khalid Siddiqui and Checker Taxi Company, Inc., a Foreign Corporation; and Timo K. Harres, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-1321 |
| Filed<br>Rehearing denied | May 29, 2015<br>July 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-7768; the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Mark L. Karno and Andrew J. Mazzuca, both of Mark L. Karno & Associates, of Chicago, for appellant.<br><br>Allen L. Wiederer, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Gordon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Joe Silverberg, filed suit against defendant, Mohamed J. Haji, for damages arising from a July 6, 2008, car accident. Plaintiff filed his complaint against defendant on July 6, 2010, and, after various attempts to locate and serve defendant spanning a 41-month period, service was ultimately accomplished on December 11, 2013. Defendant then filed a motion to dismiss pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), claiming that plaintiff had failed to exercise reasonable diligence in obtaining service over him. The trial court granted that motion, dismissing the complaint as to defendant with prejudice. Plaintiff now appeals, arguing, first, that the court erred as a matter of law by considering improper factors and by failing to consider the totality of the circumstances in rendering judgment; and second, that the court abused its discretion when it granted defendant's motion. We reverse the trial court's judgment and remand for further proceedings.

¶ 2    On July 6, 2010, the last day of the statute of limitations period, plaintiff filed a complaint against defendant in connection with a July 6, 2008, three-vehicle accident on Lake Shore Drive in Chicago. Plaintiff also brought the action against Timo K. Harres, the third driver involved in the accident; and Khalid Siddiqui[1] and Checker Taxi Company, which he alleged owned the taxi driven by defendant. Harres, Siddiqui, and Checker Taxi Company are not parties to this appeal.

¶ 3    Three days later, on July 9, 2010, plaintiff caused summons to issue to defendant at 6026 North Winthrop, Apartment H, in Chicago, the address listed for defendant in the police report. The sheriff attempted to serve the summons on defendant at that address on August 2, 2010, but was unsuccessful. The sheriff noted that "more info" was necessary, because the address was an eight-story building and "all [floors] have H."

¶ 4    Plaintiff then engaged the services of LaSalle Process Servers (LaSalle) on August 12, 2010, which performed a skip trace and reported that defendant "still resided at 6026 N. Winthrop, Apartment H, Chicago, IL 60660." Eric Elkins was appointed as a special process server on August 31, 2010, and plaintiff caused an alias summons to issue to defendant at that address. Elkins attempted service on six occasions between September 8, and September 26, 2010, but was unable to make contact with defendant. Elkins averred that he further inquired with an employee of the apartment's management, who "checked their files" and informed him that there was "no Mohamed J. Haji actually residing at the address."

¶ 5    On October 7, 2010, LaSalle performed a second skip trace in an attempt to locate defendant, but the attempt was "unsuccessful in producing any known or last known addresses." On November 5, 2010, plaintiff then filed a motion for service by special order pursuant to section 2-203.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-203.1 (West 2010)), which allows the court to permit service by an alternative method when the standard service methods are impractical. Plaintiff asserted therein that he had been unable to serve defendant despite his reasonable and diligent efforts, and attached affidavits from counsel and Elkins detailing the above-described service attempts.

_____

[1]Although the complaint referred to this codefendant as Siddigui Khalid, he confirmed his name as Khalid Siddiqui in later court filings. We will therefore refer to him by this name in the remainder of our opinion.

¶ 6        The trial court granted plaintiff's motion on January 7, 2011, allowing him to serve defendant through the Secretary of State and by "mail[ing] said service to defendant's last known address and the insurance carrier for defendant's vehicle." Four days later, on January 11, 2011,[2] plaintiff caused a second alias summons to issue, which he then mailed to the Secretary of State. The Secretary of State accepted service on defendant's behalf on January 18, 2011.

¶ 7        On July 5, 2011, plaintiff filed a motion to default defendant, and, three days later, on July 8, 2011, defendant filed a motion to quash the "purported service" on the Secretary of State. In that motion, defendant did not challenge the propriety of service through the Secretary of State, but instead claimed that plaintiff had not shown that he had fully complied with the court's order by mailing a copy of the summons to his last known address and insurance carrier.

¶ 8        On July 12, 2011, the trial court denied plaintiff's motion for default and granted defendant's motion to quash service. Although no transcript of that hearing appears in the record, defendant maintained in subsequent filings that the alias summons was "invalid" because it "was not issued by the Clerk of the Circuit Court." The court further granted plaintiff leave to "issue and serve alias summons in accord and compliance with" its January 7, 2011, order.

¶ 9        Two days later, on July 14, 2011, plaintiff caused a third alias summons to issue, and that summons was accepted by the Secretary of State on July 20, 2011. On February 22, 2012, defendant filed a new motion to quash service, claiming that the affidavit supporting plaintiff's motion for service by special order was insufficient under section 2-203.1 of the Code. Defendant alleged that the supporting affidavit of plaintiff's counsel did not "adequately state the nature and extent of the investigation done to determine defendant's whereabouts." The court denied that motion on June 15, 2012, and granted defendant until July 13, 2012, to answer or otherwise plead.

¶ 10       On July 13, 2012, defendant filed a motion to dismiss the action pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), asserting that plaintiff had failed to exercise reasonable diligence in serving him with process "as evidenced by the passage of more than 12 months from the filing of this suit until service of summons through the Secretary of State by special order of court." After briefing was completed, the trial court entered an order granting defendant's motion to dismiss on September 18, 2012. In its written order, the court noted that section 10-301 of the Illinois Vehicle Code (nonresident motorist statute) (625 ILCS 5/10-301 (West 2010)), allowed service on a defendant by serving the Secretary of State, "provided that the claim arises from the use of a motor vehicle within this State, the defendant is a nonresident or subsequently becomes a nonresident, and notice of the action is sent to the nonresident defendant's last known address." The court observed, however, that "strict compliance" with the statute must be met, and that "[t]here is no record before this Court that Defendant Haji is not a resident of the State of Illinois."

¶ 11       The court continued:

_____

[2]Although the second alias summons bears an ink stamp reading "JAN 11 2010," this date appears to be inaccurate, as it predates the filing of this action, and the transaction receipt on the reverse-side of the summons reads "1/11/2011."

"Assuming *arguendo* that Plaintiff properly effectuated service upon Defendant Haji via substitute service through the Secretary of State, this Court nonetheless finds that the other factors considered under a Rule 103(b) analysis are not satisfied.

For example, based on the record before this Court, there is no indication of whether Plaintiff was aware of Defendant Haji's location or whether Defendant Haji's location could be easily ascertained. Here, Plaintiff issued all Summons and Alias Summons to Defendant at the 6026 North Winthrop location. Although Plaintiff's Special Process Server conducted an investigation by speaking with the management company of that location, this unidentified employee purportedly stated that nobody by that name resided at that location. Plaintiff offers no information as to what other steps were taken to locate Defendant Haji's whereabouts. In fact, there is no evidence that Plaintiff ever conducted a skip trace search on Defendant Haji. Rather, Plaintiff merely jumped to the conclusion that Defendant Haji moved out of this State."

¶ 12 The court then went on to observe that there was no evidence suggesting that defendant had actual notice of the lawsuit and that plaintiff "failed to assert any special circumstances" explaining the delay in effecting service. The court thus determined, "after evaluating the totality of the circumstances in this case," that plaintiff did not demonstrate reasonable diligence in effecting service on defendant. In delivering that judgment, the court also *sua sponte* reversed its June 15, 2012, order denying defendant's prior motion to quash service.

¶ 13 On October 18, 2012, plaintiff filed a motion to reconsider that ruling. In that motion, plaintiff agreed that there was no evidence in the record to show that defendant was a nonresident, but he claimed that the substitute service on the Secretary of State had been allowed–not under the nonresident motorist statute–but instead as a method of special service under section 2-203.1 of the Code, due to the impracticality of standard service methods. Plaintiff further noted that the factors used by the court to dismiss the matter were contradicted by the record and plaintiff's motion for special service, which had outlined plaintiff's investigation into defendant's whereabouts, including the use of two separate skip traces. Plaintiff argued that there was "no indication that Defendant Haji's location could be easily ascertained through other reasonable means" and that it was not reasonable for the court to charge this factor against him where defendant had not argued or created a record showing that he was amenable to such service.

¶ 14 On April 3, 2013, the court denied plaintiff's motion to reconsider, but "clarif[ied]" its ruling in a written "Amended Order." The court reaffirmed its *sua sponte* decision to quash service on defendant, observing that, where special service under section 2-203.1 of the Code is allowed through service on the Secretary of State, the "additional strict requirements of [the nonresident motorist statute] must be met [including] the non-residency or subsequent non-residency of the defendant." The court reiterated the lack of evidence showing that defendant was a nonresident, and determined that service was invalid. The court then determined that once service was quashed, it no longer had jurisdiction to consider defendant's motion to dismiss. Consequently, it vacated the order of September 18, 2012, dismissing defendant, and the "portion of the June 15, 2012 Order of Court that denied Defendant Haji's Motion to Quash." Plaintiff was granted leave to file another alias summons *instanter*.

¶ 15 On April 9, 2013, plaintiff caused the fourth alias summons to issue to defendant at a possible new address. Robert A. Clarke, a special process server, attempted service at 6167 North Broadway Street, Apartment 106, in Chicago on April 24, 2013. Clarke determined, however, that defendant did "not reside" there, as the address was a "DHL mailbox center." He then attempted to serve defendant at apartment 4H of the previously known Winthrop address. Clarke was unable to make contact with defendant, and spoke to a manager at the apartment building who informed him that defendant had moved out "about a year ago." Clarke further indicated that a "skip[ ]trace was unable to locate the defendant at this time."

¶ 16 On May 10, 2013, a fifth alias summons issued to defendant at 585 Gundersen Drive in Carol Stream, Illinois. Doreen R. Warner, a special process server, unsuccessfully attempted to serve defendant at that address on May 22, 2013. She observed that the building was a single-family home and that defendant was "NOT LISTED ON THE DIRECTORY," but noted that a skip trace revealed a new possible address of "3121 PILLSBURY AVE S APT 1504, MINNEAPOLIS, MN 55408-6000."

¶ 17 Meanwhile, on May 15, 2013, plaintiff filed a subpoena to On the Go Cab Co. requesting defendant's personnel file. Based on the Minneapolis address found for defendant, plaintiff caused a sixth alias summons to issue for defendant on June 20, 2013, through the Secretary of State under the nonresident motorist statute. Defendant filed a motion to quash that service on July 17, 2013, observing that the affidavit of compliance "prepared and filed by plaintiff's attorney to induce the Secretary of State to accept service of process falsely aver[red] that the vehicle being driven by [defendant] at the time of the alleged occurrence was owned by a nonresident."

¶ 18 Plaintiff responded to defendant's motion to quash and acknowledged that he had mistakenly checked the box for a nonresident "owner," rather than "driver" on the form affidavit. He informed the court that he had submitted an amended affidavit of compliance to the Secretary of State after the error was brought to his attention. Plaintiff maintained that the error did not "negate the proper basis for the application of [the nonresident motorist statute]," and, in any case, the error had been subsequently corrected.

¶ 19 On July 25, 2013, the court entered a written order quashing service through the Secretary of State, without elaboration. Plaintiff then caused a seventh alias summons to issue to defendant through the Secretary of State on the same day, with the appropriate box checked on the affidavit of compliance. The summons was accepted by the Secretary of State on July 31, 2013, and plaintiff filed a motion to default defendant on September 27, 2013.

¶ 20 Thereafter, on October 7, 2013, defendant filed a motion to quash service through the Secretary of State, this time alleging that he "was not a non-resident of the State of Illinois at the time of the alleged occurrence or at the time of the purported service of process of the Secretary of State." In support, defendant submitted an affidavit claiming that he was currently an Illinois resident and that he had been an Illinois resident at the time of the accident and on July 25 and July 31, 2013.

¶ 21 That same day, plaintiff filed a motion to conduct "limited discovery with respect to the issue of Defendant Haji's residence" under Illinois Supreme Court Rule 201(l) (eff. Jan. 1, 2013), in order to "investigate and properly respond to" defendant's motion to quash service. The court granted plaintiff's motion on October 7, 2013, and plaintiff immediately served discovery on defendant, requesting compliance by November 4, 2013.

¶ 22    On November 18, 2013, counsel for defendant indicated to the court that defendant was out of the country and had not yet answered plaintiff's discovery requests. The court ordered defendant to disclose his current residential address to plaintiff, and the following day, counsel for defendant informed plaintiff of his address at 6301 North Paulina Street, Apartment 2B, in Chicago. An eighth alias summons issued for defendant at that address on November 22, 2013, although defendant's last name was misspelled as "Jaji" on the document.

¶ 23    Special process server Clarke subsequently attempted to serve defendant at the Paulina address on two occasions but was unsuccessful. Clarke stated that on November 29, 2013, he spoke to Ahmed Ali, who told him that he lived there with "Mr. Warsame, and Mr. Abdirkarin" and that he did not know defendant. Clarke returned on December 11, 2013, and spoke to another male subject who claimed to be a resident of the unit, but also "didn't know who [defendant] was."

¶ 24    On January 6, 2014, the court entered an order quashing the prior service through the Secretary of State. It noted, however, that defendant "agree[d] that he was served" via abode service on December 11, 2013, "and the return *** of non-service was the result of misnomer." Defendant was then granted until February 3, 2014, to answer or otherwise plead.

¶ 25    On January 31, 2014, defendant filed a motion to dismiss the action against him pursuant to Rule 103(b), claiming that plaintiff failed to exercise reasonable diligence in serving him with process. After briefing, the court held argument on defendant's motion on April 10, 2014. During that hearing, the court questioned the parties about the procedural posture of the case:

> "THE COURT: Let me ask this question.
>
> PLAINTIFF: Sure.
>
> THE COURT: When Judge Savage granted the Motion to Dismiss pursuant to [Rule] 103(b), it was without prejudice; is that correct?
>
> DEFENDANT: No.
>
> PLAINTIFF: Because the statute of limitations would have elapsed by the time in question, I believe, that it was necessarily with prejudice.
>
> THE COURT: Okay. So how did we get here?
>
> PLAINTIFF: There was a motion brought subsequent to her ruling on [Rule] 103(b) to reconsider that ruling *** [and] she does vacate her order granting [Rule] 103(b) reversal.
>
> * * *
>
> PLAINTIFF: *** [D]uring her ruling on the [Rule] 103(b)[, she] reconsidered *sua sponte*, and she reversed herself *** so that service was still considered quashed. But the case was resurrected. The dismissal with prejudice was vacated.
>
> THE COURT: And she gave some analysis in her order granting the original [Rule] 103(b) motion, correct?
>
> PLAINTIFF: Correct.
>
> THE COURT: I want the record to be clear, because we're starting at the very beginning where certain attempts at service was [*sic*] made.

A judge that preceded me made some rulings and some observations and first granted the motion [pursuant to Rule] 103(b), with prejudice and then reversed herself?

PLAINTIFF: Correct.

THE COURT: I don't really feel comfortable getting into the middle of whether what she did was correct or not.

So since she quashed service but made some analysis about whether a [Rule] 103(b) motion should have been granted, I want the record to be clear that I'm not making decisions about whether or not Judge Savage was correct in granting the [Rule] 103(b) motion, and I don't want my decision today to be dependent on some analysis that she made when she granted a Motion to Dismiss pursuant to [Rule] 103(b) and then vacated it. I presume that she–I don't know what she did.

So my main focus now will be subsequent to the situation that Judge Savage was involved in. I want to hear what attempts at service were made after the Motion to Quash.

That's what I'm interested in, because otherwise I think I might be tempted to have to try to figure out whether I agree with Judge Savage's analysis.

\*\*\*

And as far as I can say, in light of what happened, to me that's a muddle that I don't want to get into.

I would rather begin where she quashed service, vacated her [Rule] 103(b) order, and start there with the attempts at service."

¶ 26    Plaintiff then outlined the attempts at service since the previous dismissal was vacated, then asked:

"PLAINTIFF: Now, am I correct Your Honor does not want us to address activities prior to or–

THE COURT: Well, you can make the record. I just want the record to be clear that I'm not getting into her analysis.

PLAINTIFF: I understand. Sure.

DEFENDANT: To be perfectly clear, you're not going to disregard their lack of diligence up front? You're just not going to consider Judge Savage's analysis of that? Am I correct?

THE COURT: I feel that Judge Savage became involved in the issue of [Rule] 103(b) and whether or not there was proper service, and so you can make your record, but I don't feel comfortable doing some kind of an analysis which may or may not agree with what Judge Savage did. And that's the problem.

You can make your record. I don't have any problem with that. But I really am looking at what happened subsequent to what Judge Savage did.

\* \* \*

So I want you to make your record, but I just want the record to be clear that I'm not in here second guessing whatever her analysis was. I just can't do that."

¶ 27    Plaintiff then outlined his prior attempts to serve defendant for "the record," and, at the conclusion of argument, the trial court stated, "In this case, I'm going to grant the motion

[pursuant to Rule] 103(b). There's been a multitude of errors and mistakes and inability of the people who were hired by the plaintiff to obtain proper information in order to locate defendant." The court observed that there had been some question about whether defendant had complied with the driver's licensing requirement to notify the Secretary of State of his change of address, but noted that "as I sit here today, I still don't have any record showing that defendant was hiding from service in this case." The court then dismissed the case with prejudice as to defendant, and plaintiff filed a notice of appeal from that ruling.

¶ 28    In this court, plaintiff argues that the court erred in granting defendant's motion to dismiss because it failed to properly consider the factors relevant to a Rule 103(b) analysis, and because an analysis of the record shows that "nearly every enumerated factor weighs heavily in plaintiff's favor."

¶ 29    Under Rule 103(b):

"If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant ***. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances ***." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 30    The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process on them and to prevent the circumvention of the statute of limitations. *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990). However, Rule 103(b) is not to be used merely to clear a crowded docket, and if a plaintiff made a reasonable effort to locate defendant during the months between filing the complaint and service of summons, a dismissal order would not be proper. *McCormack v. Leons*, 261 Ill. App. 3d 293, 295 (1994).

¶ 31    Our supreme court has further noted that "[d]ismissal of a cause with prejudice under Rule 103(b) is a harsh penalty which is justified when the delay in service of process is of a length which denies a defendant a 'fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible.' " *Segal*, 136 Ill. 2d at 288 (quoting *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90 (1954)). Our courts have thus shown reluctance to allow the use of such harsh sanctions in cases where the errors causing the delay in service were relatively minor or inadvertent. See *Segal*, 136 Ill. 2d at 288; *Licka v. William A. Sales, Ltd.*, 70 Ill. App. 3d 929, 937-38 (1979).

¶ 32    The trial court's determination of a plaintiff's lack of diligence is an objective one and a "fact-intensive inquiry suited to balancing, not bright lines." (Internal quotation marks omitted.) *McRoberts v. Bridgestone Americas Holding, Inc.*, 365 Ill. App. 3d 1039, 1042 (2006). As such, Rule 103(b) does not set a particular time limit within which a defendant must be served. Rather, a court is required to consider "the passage of time in relation to all the other facts and circumstances of each case individually." *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213 (2007). The relevant factors to consider when determining whether to grant a Rule 103(b) motion, include, but are not limited to: (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a

result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant. *Segal*, 136 Ill. 2d at 287.

¶ 33    Plaintiff first contends that the court failed to consider the totality of the circumstances when it focused solely on activity subsequent to the vacatur of the previous dismissal. Plaintiff also maintains that the court erred by not basing its decision on an analysis of the factors relevant to Rule 103(b) but, rather, that it solely focused on "errors, mistakes and inability" of the people plaintiff hired to locate defendant and on the "absence of a record" showing that defendant was evading service.

¶ 34    Generally, a trial court's ruling on a motion to dismiss pursuant to Rule 103(b) will not be disturbed absent a showing of an abuse of discretion, *i.e.*, where that ruling is " 'so arbitrary, fanciful, or unreasonable that no reasonable person would take the view it adopted.' " *Christian v. Lincoln Automotive Co.*, 403 Ill. App. 3d 1038, 1044 (2010) (quoting *People v. Lisle*, 376 Ill. App. 3d 67, 78 (2007)). However, if a trial court's decision rests on an error of law, then it is clear that an abuse of discretion has occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the law. *People v. Porter-Boens*, 2013 IL App (1st) 111074, ¶ 10.

¶ 35    The record in this case shows that the court did not consider the totality of the circumstances in ruling on defendant's motion to dismiss as it was required to do under Rule 103(b). Because the prior dismissal had been vacated, the appropriate time frame for consideration was the entire 41-month period since the complaint was filed. The trial court's reluctance to second-guess the judgment of the preceding judge limited the scope of its review to only 8 of the total 41 months at issue and prevented it from reviewing the totality of the circumstances. This was an abuse of discretion.

¶ 36    Defendant, however, contends that the trial court's statements were proper and make clear–not that it was ignoring the earlier time period–that it was not relying on the prior judge's *analysis* and, instead, was conducting an independent analysis of the appropriate time frame. We disagree. The court specifically indicated that it did not wish to review the entire time period, calling the activity prior to the vacatur a "muddle that [it did not] want to get into." Instead, the court informed the parties that it was interested only in the activity occurring after the prior motion to dismiss was vacated.

¶ 37    Moreover, the court never articulated the Rule 103(b) factors or expressed any consideration of how they related to the facts of this case. While we recognize that Rule 103(b) does not require a trial court to specifically delineate the reasons for its decision, we find that the court's commentary in this case suggests that it did not actually consider the appropriate factors when deciding defendant's motion to dismiss. Instead, the court relied on the "multitude of errors and mistakes and inability of the people who were hired by the plaintiff" to serve defendant. This was an improper consideration, however, as our appellate courts have recognized that a plaintiff is generally entitled to rely on the representations of those it retains to assist in serving the defendant. See *Stash v. Doll*, 223 Ill. App. 3d 662, 664-65 (1992) (concluding that the plaintiff was entitled to rely on a process server's report that an address was incorrect); *McCormack*, 261 Ill. App. 3d at 296 (finding the plaintiff's reliance on information obtained from its investigator was reasonable).

¶ 38    The only other remark the court made in dismissing the case against defendant was that there was nothing to show that he was "hiding from service." While a defendant's avoidance of service could be relevant to a Rule 103(b) analysis insofar as his evasion makes him more

difficult to locate, the focus of a Rule 103(b) inquiry is not the defendant's subjective intentions. Instead, the standard is one of objective reasonableness on the part of the plaintiff. Whether a defendant is purposely hiding, or is difficult to locate for a more innocuous reason, if the record shows that the plaintiff exercised reasonable diligence in his attempts to serve the defendant, a dismissal order is improper. *McCormack*, 261 Ill. App. 3d at 295. Regardless of whether defendant was evading service in this case, we find nothing in the record to show that defendant's whereabouts could have been ascertained. We thus conclude that the court improperly relied on defendant's lack of evasion and that it abused its discretion in granting defendant's motion to dismiss.

¶ 39        Even more importantly, we find that a proper analysis of the Rule 103(b) factors shows that the court's dismissal must be reversed. However, before turning to the merits of this argument, we first address defendant's claim that much of the record showing plaintiff's diligence "do[es] not constitute competent evidence." He specifically objects to a " 'certified' chronology of events" which was submitted as part of plaintiff's response to his motion to dismiss, arguing that the certification of counsel is inadequate because the attorney who signed the certification had become employed during the course of the proceedings, and thus "could not have personal knowledge of matters relating to efforts made to serve [defendant] before that time." Defendant also maintains that the plaintiff's references to skip traces which were unsuccessful in finding additional addresses for defendant are "not competent evidence" because they are "bare conclusion[s] unsupported by any specific facts as to what was purportedly done to obtain such information." We are unpersuaded.

¶ 40        Other than a general citation to the rule of civil procedure requiring certification of pleadings (735 ILCS 5/1-109 (West 2010)), defendant cites no relevant authority for his arguments that such evidence is "incompetent" and should not be considered, and has thus forfeited any such challenge. We also observe, however, that the evidence of which defendant complains is located elsewhere in the record on appeal. It is this evidence–not the chronology submitted by plaintiff in his response to defendant's motion to dismiss–upon which this court relies in resolving the issues on appeal. Defendant's claims to the contrary require no further review.

¶ 41        In applying the Rule 103(b) factors to the facts of the present case, we find that plaintiff's efforts to obtain service upon defendant were more than sufficient to constitute reasonable diligence. Although 41 months elapsed between the initiation of the lawsuit and defendant's stipulation that service occurred, as plaintiff notes, a "careful review [of the record] reveals that significant portions" of that time period "consist of intervals between [p]laintiff achieving apparent service of process and a subsequent ruling invalidating said service." The only periods of time during which the case against defendant was pending without apparent service of process, were, specifically: July 6, 2010, to January 18, 2011; July 12, 2011, to July 20, 2011; April 3, 2013, to June 25, 2013; and July 23, 2013, to July 31, 2013. These intervals aggregate to approximately 9½ months of the total 41-month time period at issue.

¶ 42        In this respect, we find this case analogous to *Licka*, 70 Ill. App. 3d at 937-38. In that case, although the plaintiff did not actually effect service on the defendant until 13 months after the amended complaint was filed, the court noted that the plaintiff had been "justifiably lulled" for four months of that period when service was mistakenly accomplished on a different doctor who shared the same name as the defendant. *Licka*, 70 Ill. App. 3d at 937. The court also observed that the plaintiff had otherwise actively and persistently searched for

the defendant's proper address and had sent four alias summonses within this period of time. *Licka*, 70 Ill. App. 3d at 937-38. In those circumstances, the court found that the trial court had abused its discretion in dismissing the action against the defendant under Rule 103(b) and reversed that order. *Licka*, 70 Ill. App. 3d at 937-38.

¶ 43    Similarly, in this case, there were vast portions of the overall time period when plaintiff was justifiably lulled by either apparently successful service or by the court dismissing defendant, only to later vacate its order of dismissal. See *Licka*, 70 Ill. App. 3d at 937. During the times after plaintiff learned that his previous service attempts had been unsuccessful, plaintiff did not sit idly by (see *Brezinski v. Vohra*, 258 Ill. App. 3d 702, 705 (1994)), but instead made numerous attempts to rectify the situation and locate and effect service on defendant. Plaintiff retained special process servers, utilized various skip traces to locate defendant, and filed a motion for service by special order after service could not be obtained using standard methods. Over the course of these proceedings, plaintiff issued an initial summons and eight alias summonses. We believe that plaintiff's efforts in this case are sufficient to demonstrate his reasonable diligence in effecting service on defendant.

¶ 44    We also find nothing in the record to show that plaintiff actually knew of defendant's location or that his location could have been easily ascertained. To the contrary, plaintiff's efforts to serve defendant at the various addresses which were revealed by skip traces were wholly unsuccessful, and plaintiff was informed on more than one occasion that defendant did not live at those addresses or had moved away.

¶ 45    We find *Licka*, 70 Ill. App. 3d 929, instructive on this point as well. The physician defendant in *Licka* filed an affidavit in support of his Rule 103(b) motion to dismiss, listing his home address and stating that he had an office in Chicago and was listed in the directory at Lutheran General Hospital. *Licka*, 70 Ill. App. 3d at 933. Nonetheless, this court found that the plaintiff's reasonable diligence had been "amply illustrated" given the plaintiff's "numerous attempts to serve" the defendant over the 13-month period. *Licka*, 70 Ill. App. 3d at 937-38; see also *Dupon v. Kaplan*, 163 Ill. App. 3d 451, 454-56 (1987) (reversing Rule 103(b) dismissal in spite of the defendant's affidavit listing both his home and work addresses, where the record otherwise showed that the plaintiff had attempted to serve the defendant on eight occasions before service was ultimately accomplished by a special process server).

¶ 46    This case, by contrast, presents even stronger grounds for reversal, as defendant never disclosed in either of his Rule 103(b) motions, or at any other time, where he could have been located until he was ordered to do so by the trial court. Defendant maintains that plaintiff knew of his residence at the Winthrop address and contends that if he had "subpoenaed or otherwise requested information from the Secretary of State about [defendant's] address he could have easily determined the floor on which [defendant] was residing." However, it is unclear what defendant's proposed inquiry would have accomplished, because we find nothing in the record to show that he was actually living at the Winthrop address at any point during the proceedings.

¶ 47    The primary evidence defendant relies on to show his residence at the Winthrop address is the April 24, 2013, report from a process server that a manager of the apartment building said that Haji had moved out of that address "about a year ago." Presumably, defendant maintains that this statement shows that he was actually living at the address during the early months of these proceedings and that plaintiff failed to exercise reasonable diligence in

serving him there during that time. This argument, however, ignores the evidence in the record showing that as early as September 2010–just over two months after the complaint was filed–another process server unsuccessfully attempted to serve defendant at that building on six occasions and was told by apartment management that there was "no Mohamed J. Haji actually residing at the address." At oral argument, defendant maintained that this court should disregard the September 2010 statement because it is hearsay but that we should consider the April 2013 statement for its truth because plaintiff has never objected to his use of it.

¶ 48    We reject defendant's hearsay argument because we consider these statements–not for their truth–as evidence of plaintiff's knowledge as to where defendant could be found, and therefore, plaintiff's diligence in effecting service on him. As such, they are not hearsay. See *People v. Peoples*, 377 Ill. App. 3d 978, 983 (2007) ("Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted."). In this case, regardless of defendant's actual residence at the Winthrop address, the process servers retained by plaintiff spoke to representatives at the apartment building, and were told on both occasions that defendant did not live in the building at that time.

¶ 49    Defendant additionally points to a copy of his driver's license and a document, purportedly from the Secretary of State, listing defendant's address as 6026 North Winthrop Avenue, Apartment 4H. He acknowledges that his driver's license was issued in January 2008, but cites *Powers v. Kelley*, 83 Ill. App. 2d 289, 297 (1967), for the proposition that "residence once established is presumed to continue until the contrary is shown."

¶ 50    The defendant in *Powers* appealed the judgment entered against him after a jury trial, contending that the trial court had erred by allowing the plaintiff to read the deposition testimony of a witness into evidence. *Powers*, 83 Ill. App. 2d at 294. The Fifth District Appellate Court noted that the deposition testimony indicated that he lived in Missouri, and the defendant had made no showing which would rebut the presumption of the deponent's continued residence there. *Powers*, 83 Ill. App. 2d at 296-97. The court thus concluded that the deposition testimony had been properly admitted under the statute allowing for the admission of deposition testimony where the deponent is "out of the county" at the time of trial. (Internal quotation marks omitted.) *Powers*, 83 Ill. App. 2d at 296 n.1, 297.

¶ 51    This case, by contrast, does not concern the rule regarding the admission of deposition testimony at trial. Moreover, there was no initial showing that defendant lived in any particular place during the proceedings, such that a presumption of that residency could continue. At best, the Secretary of State documents indicate that defendant reported the Winthrop address as his residence in January of 2008–six months prior to the car accident at issue–but there is nothing in the record to show that he kept the Secretary of State apprised of his current address thereafter. As we have noted, the record indicates that plaintiff was informed that defendant did not live at that address as early as two months following the initiation of these proceedings. We thus find *Powers* distinguishable from the case at bar.

¶ 52    We also conclude that the fifth factor, defendant's actual knowledge of the proceedings, weighs in favor of denying defendant's motion to dismiss under Rule 103(b). On July 8, 2011, a mere three days after plaintiff first filed a motion to default, defendant filed a motion to quash service. Since that time, defendant continued to participate in the proceedings through counsel on a somewhat regular basis, filing three more motions to quash and two motions to dismiss. In defendant's motion to quash dated October 7, 2013, defendant

- 12 -

attached his own affidavit in which he acknowledged that he was "one of the named defendants in this case." Defendant thus appears to have been aware of the proceedings against him since at least July of 2011. See *Hahn v. Wiggins*, 23 Ill. App. 2d 391, 397 (1959) ("The law is well established that notice of an attorney is notice to the client who employs him, and that knowledge of an attorney is knowledge of or imputed to his client.").

¶ 53    Plaintiff additionally maintains that the "special circumstances" factor weighs in his favor. He specifically contends that the "other case activity" which occurred in this matter should be considered, and "can excuse delay in a [Rule] 103(b) context." Plaintiff points to evidence in the record showing that during the time plaintiff was attempting to effect service on defendant, he was also attempting to locate and serve the other defendants and responding to motions to quash service on or dismiss those other defendants.

¶ 54    In support, plaintiff cites *Brezinski*, 258 Ill. App. 3d at 705, in which this court found that the circuit court had abused its discretion in concluding that the plaintiff's attempts at serving the defendant had not been diligent. This court observed that the record showed:

> "[D]uring the period in which [the defendant] went unserved, plaintiff was not idly ignoring his case. Indeed, plaintiff was responding to six motions to dismiss the action brought by other defendants. These six motions were brought during a period from October 5, 1990, to February 1991. This court has held that activity of this type on plaintiff's part constitutes diligence within the context of a motion to dismiss pursuant to Supreme Court Rule 103(b)." *Brezinski*, 258 Ill. App. 3d at 705 (citing *Cannon v. Dini*, 226 Ill. App. 3d 82 (1992)).

¶ 55    Similarly, in *Cannon*, 226 Ill. App. 3d at 89, this court concluded that the trial court's dismissal of the defendant's complaint was an abuse of discretion. Although it took 13 months to effect service on the defendant in *Cannon*, we observed that the plaintiff had been preoccupied by resisting motions to dismiss filed by other defendants for 7 of the 13 months, and, after those motions were resolved, the plaintiff diligently sought to serve the defendant. *Cannon*, 226 Ill. App. 3d at 87-88.

¶ 56    Defendant, however, disagrees with plaintiff's interpretation of these cases and contends that our decision in *Brezinski* was based on a misreading of *Cannon* and was therefore erroneous. He asserts, without citation to authority, that "[o]bviously, a plaintiff's conduct in respect to prosecuting a case against some defendants can have nothing to do with whether reasonable diligence was exercised in serving another defendant." We cannot agree.

¶ 57    As both *Brezinski* and *Cannon* illustrate, other activity occurring in a case at the time a plaintiff is attempting to serve a defendant may properly be considered as a special circumstance in a Rule 103(b) analysis. In this case, the record shows that plaintiff had similar difficulties locating and serving codefendant Siddiqui. Plaintiff attempted to serve codefendant Siddiqui through the sheriff from August through November of 2010, then retained Stern Process and Investigations, LLC, which attempted to serve him at another possible address. After those attempts were unsuccessful, plaintiff sought and received a special order allowing for service through the Secretary of State on August 9, 2011, then effected service on codefendant Siddiqui in that manner. Thereafter, codefendant Siddiqui filed a motion to quash service through the Secretary of State and notified plaintiff of his residential address, where he claimed to have continually resided throughout the proceedings. Plaintiff attempted to serve him at that address on numerous occasions from December 2011 through June 2013, during which time the process servers retained by plaintiff were

- 13 -

continually told by neighbors that he was out of town. Plaintiff filed another motion for service by special order in July 2013, but, for reasons not apparent in the record, plaintiff voluntarily dismissed codefendant Siddiqui thereafter. Based on this record, we conclude that the significant effort required to locate and serve codefendant Siddiqui is a special circumstance which would have reasonably affected plaintiff's efforts to effect service on defendant, and find that this factor weighs in plaintiff's favor.

¶ 58    We also find another special circumstance present in this case. On July 14, 2011, plaintiff caused the third alias summons to issue for defendant through the Secretary of State, pursuant to the trial court's previous order allowing such special service under section 2-203.1 of the Code. Plaintiff served defendant in this manner, and on February 22, 2012, defendant moved to quash that service. The court initially denied that motion on June 15, 2012, but later reversed that ruling, concluding in both an initial order, and in a "clarif[ied]" amended order, that service was improper because plaintiff had not shown that defendant was a nonresident. The court determined that where special service under section 2-203.1 of the Code is allowed through service on the Secretary of State, the "additional strict requirements of [the nonresident motorist statute] must be met [including] the non-residency or subsequent non-residency of the defendant."

¶ 59    Although the trial court's order quashing service is not specifically before this court for review, we observe that the court's judgment was based on a misapplication of the law, which reasonably affected plaintiff's efforts to serve defendant.

¶ 60    Generally, personal jurisdiction by service of process is obtained "(1) by leaving a copy of the summons with the defendant personally, [or] (2) by leaving a copy at the defendant's usual place of abode" with a family or household member 13 years or older. 735 ILCS 5/2-203 (West 2010). However, section 2-203.1 permits the court to provide an alternative method of service where standard service is impractical. The court is specifically authorized to order service to be made "in *any* manner consistent with due process." (Emphasis added.) 735 ILCS 5/2-203.1 (West 2010).

¶ 61    Separately, the nonresident motorist statute allows substituted service on an out-of-state motorist by serving the Secretary of State. The statute specifically provides:

> "[The] use and operation by any person or his duly authorized agent or employee of a vehicle over or upon the highways of the State of Illinois, shall be deemed an appointment by such person of the Secretary of State to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and the use or operation shall be signification of his agreement that such process against him which is so served, shall be of the same legal force and validity as though served upon him personally if such person is a non-resident of this State or at the time a cause of action arises is a resident of this State but subsequently becomes a non-resident of this State, or in the event the vehicle is owned by a non-resident and is being operated over and upon the highways of this State with the owner's express or implied permission." 625 ILCS 5/10-301(a) (West 2010).

¶ 62    Unlike under section 2-203.1, a party seeking to serve another party pursuant to the nonresident motorist statute need not seek leave of court before effecting service in the proscribed manner, so long as the requirements of that statute are met. See 625 ILCS 5/10-301(b) (West 2010).

¶ 63        As the plain language of these statutes make clear, section 2-203.1 and the nonresident motorist statute apply in different circumstances–section 2-203.1 applies where standard service methods are impractical, whereas the nonresident motorist statute applies only to the narrow situations in which an action is brought against a nonresident for damages arising from the use or operation of a vehicle on Illinois highways. The trial court below, however, conflated these two sections and determined that serving a party through the Secretary of State pursuant to section 2-203.1 required compliance with the nonresident motorist statute. This erroneous position reasonably affected plaintiff's efforts to serve defendant, as it quashed the prior service on defendant and returned the parties to the beginning stages, requiring plaintiff to serve defendant anew. Had the court not taken this flawed view of section 2-203.1 and instead denied defendant's February 2012 motion to quash, the total time period between the initiation of these proceedings and service on defendant would have been just over 12 months, and not the total 41 months currently at issue. In such circumstances, we find it unfair to charge plaintiff with the remaining 29 months required to ultimately serve defendant.

¶ 64        In closing, we note that the Rule 103(b) test "is not whether the plaintiff has done everything possible with the utmost prudence and diligence but, rather, whether the plaintiff exercised reasonable diligence so that the delay of service did not deny the defendant a fair opportunity to investigate the facts of the case." *Verploegh v. Gagliano*, 396 Ill. App. 3d 1041, 1046 (2009); see also *McCormack*, 261 Ill. App. 3d at 295 ("Plaintiffs are not required to do everything possible to discover a defendant's whereabouts, but rather are expected to exercise reasonable diligence."). Although defendant makes various allegations of deficiencies in plaintiff's efforts to serve him, given the facts of this case, we find that plaintiff exercised reasonable diligence.

¶ 65        Based on our review of the entire record, and our analysis of the relevant factors, we conclude that the trial court abused its discretion in dismissing this lawsuit pursuant to Rule 103(b). Therefore, we reverse the circuit court's order dismissing defendant with prejudice and remand the cause for further proceedings consistent with this opinion.

¶ 66        Reversed and remanded.