NOTICE

Decision filed 06/05/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0781

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ROBERT McROBERTS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Saline County. |
| | ) | |
| v. | ) | No. 03-L-29 |
| | ) | |
| BRIDGESTONE AMERICAS HOLDING, | ) | |
| INC., d/b/a BRIDGESTONE/FIRESTONE | ) | |
| NORTH AMERICAN TIRE, LLC, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SOUTHERN ILLINOIS TIRE OF | ) | |
| HARRISBURG, INC., | ) | Honorable |
| | ) | Brocton Lockwood, |
| Defendant. | ) | Judge, presiding. |

_____

JUSTICE McGLYNN delivered the opinion of the court:

After the plaintiff, Robert McRoberts, served the defendant Bridgestone/Firestone nearly a year after he had filed his lawsuit, the trial court granted Bridgestone/Firestone's motion to dismiss for a failure to act with reasonable diligence in effecting the service of process. McRoberts now appeals. We reverse and remand.

On April 13, 2001, Robert McRoberts was involved in an automobile accident after the Bridgestone/Firestone tires on his vehicle "blew out" while he was driving. On December 4, 2001, McRoberts sent a letter to Bridgestone/Firestone headquarters and its registered agent in Chicago, Illinois, informing Bridgestone/Firestone that he had been in an automobile accident and that he believed his injuries were caused by a defect in his

1

Bridgestone/Firestone tires. Soon after, McRoberts received a letter from Phil Floeh of Nixon Multi-Line Adjusters acknowledging McRoberts' "letter of representation" and stating that he would be "handling this claim on behalf of Firestone." Thereafter, McRoberts and Floeh corresponded and spoke on the telephone several times regarding McRoberts' claim. McRoberts also sent Floeh the police reports regarding the accident and various medical records and bills detailing his injuries and expenses. Although the two continued to correspond and speak every month, a settlement was not reached before the date on which the statute of limitations would have barred a lawsuit. Therefore, McRoberts filed this lawsuit against the defendants on March 31, 2003, right before the statute of limitations would have run.

McRoberts continued to negotiate with Bridgestone/Firestone's adjuster and wrote the adjuster on April 24, 2003, to inform him that he had filed a lawsuit to preserve his legal rights within the statute of limitations, but he indicated that he had withheld service in an effort to "resolve this matter without the extreme expense required by both sides." McRoberts also stated, "If you feel that you cannot go forward, please advise and I will serve the parties." The adjuster's next letter acknowledged the receipt of McRoberts' April 24, 2003, letter but was silent on the issue of service.

The two continued to correspond[1] at least once a month regarding McRoberts' medical records and expenses, until November 14, 2003, when McRoberts received a letter from Bridgestone/Firestone's legal department stating that it was taking over the handling of the

_____

[1]The existence of these negotiations also was documented after McRoberts responded to the trial court's inquiry on August 27, 2003, regarding inactivity on the court file. In response, McRoberts advised, "[T]here are settlement negotiations taking place between the adjuster for Bridgestone and myself."

2

case.  The letter further stated, "[O]ur adjuster, Phil Floeh, has forwarded all documentation, including medicals, to our office."  McRoberts then sent a letter to Bridgestone/Firestone inquiring about its intentions regarding a settlement.  In its January 26, 2004, letter in response, Bridgestone/Firestone indicated as follows:

> "[T]his matter is considered a 'claim.'  Bridgestone/Firestone has not been properly served with the summons and complaint you indicate has been filed."

McRoberts' return correspondence on January 30, 2004, stated:

> "Pursuant to an agreement with Phil Floeh[,] who was the Adjuster in this claim, we withheld service on this case to try to accommodate settlement negotiations.  However, it would appear from your letter that this is not feasible.  Accordingly, we will serve your registered agent immediately."

McRoberts then served Bridgestone/Firestone on March 19, 2004.

After service was effected, Bridgestone/Firestone filed a motion to dismiss for a failure to act with reasonable diligence in effecting the service of process.  After "search[ing] for a basis to deny the motion to dismiss" and finding none, the trial court granted Bridgestone/Firestone's motion and dismissed McRoberts' complaint on October 4, 2004, pursuant to Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)).  McRoberts now appeals.  We reverse and remand.

Illinois Supreme Court Rule 103(b) provides:

> "**(b) Dismissal for Lack of Diligence.**  If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitation has not run.  The dismissal may be made on the application of any defendant or on the court's own motion."  177 Ill. 2d R. 103(b).

Although the Illinois Supreme Court has explained that a dismissal under Rule 103(b)

3

is within the sound discretion of the trial court, the standard the trial court is to apply when determining whether a plaintiff was duly diligent in effecting the service of process is an objective one, with each case turning on its own specific facts. *Segal v. Sacco*, 136 Ill. 2d 282, 286, 555 N.E.2d 719, 720 (1990); *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 381, 561 N.E.2d 25, 29 (1990); *Kreykes Electric, Inc. v. Malk & Harris*, 297 Ill. App. 3d 936, 940, 697 N.E.2d 885, 888 (1998); *Hinkle v. Henderson*, 135 F.3d 521, 524 (7th Cir. 1998). In other words, the trial court's determination of a plaintiff's lack of diligence "is a fact-intensive inquiry suited to balancing, not bright lines." *Hinkle*, 135 F.3d at 524. Furthermore, there is no set time limit during which service must be effected, and each decision on a Rule 103(b) motion to dismiss must be "based on the facts and circumstances in each particular case." *Marks v. Rueben H. Donnelley, Inc.*, 260 Ill. App. 3d 1042, 1047, 636 N.E.2d 825, 829 (1994).

In making a decision on a Rule 103(b) motion, the trial court should consider the following factors: (1) the length of time used to obtain the service of process, (2) the activities of the plaintiff, (3) the plaintiff's knowledge of the defendant's location, (4) the ease with which the defendant's whereabouts could have been ascertained, (5) special circumstances that would affect the plaintiff's rights, and (6) actual service on the defendant. *Womick*, 137 Ill. 2d at 377, 561 N.E.2d at 27. The plaintiff has the burden of showing reasonable diligence in the service of process and must give a reasonable explanation for any apparent lack of diligence. *Marks*, 260 Ill. App. 3d at 1047, 636 N.E.2d at 829.

Other factors may be considered by the court but are not determinative: (1) the defendant's knowledge of the lawsuit prior to the service of process (*Marks*, 260 Ill. App. 3d at 1047, 636 N.E.2d at 829), the lack of prejudice to the defendant (*Marks*, 260 Ill. App. 3d at 1047, 636 N.E.2d at 829), the plaintiff's efforts to obtain service through an alias summons (*Matthews v. Donnelly*, 265 Ill. App. 3d 1016, 1020, 639 N.E.2d 193, 197 (1994)), the

4

occurrence of settlement negotiations during the period of the delay (*Lee v. Decker*, 17 Ill. App. 3d 93, 96, 307 N.E.2d 773, 775-76 (1974)), and the plaintiff's full or timely use of all available resources for determining the defendant's whereabouts (*Gatto v. Nelson*, 142 Ill. App. 3d 284, 289, 492 N.E.2d 1, 5 (1986)).

Applying those factors to this case, we find that special circumstances existed in this case to show that McRoberts exhibited due diligence in serving Bridgestone/Firestone. Although Bridgestone/Firestone was not served until one year after McRoberts filed suit, McRoberts has demonstrated that his activities during that year present special circumstances that make the year delay in service reasonable─even under the confines and case law interpreting Supreme Court Rule 103(b).

The special circumstances of this case are demonstrated by the specific facts of this case. As set forth above, McRoberts sent a letter to Bridgestone/Firestone headquarters, as well as to its registered agent in Illinois, informing them of the claim. Bridgestone/Firestone then specifically directed its adjuster to contact McRoberts and handle the claim on its behalf. The record shows that from this point until McRoberts filed his suit to preserve the statute of limitations, the two were in active contact regarding McRoberts' injuries, medical records, and medical bills. Once the suit was filed, McRoberts informed Bridgestone/Firestone's adjuster that he would withhold service in the hope of settling the matter, and he asked the adjuster to advise if this arrangement was unacceptable.

There is no question that the adjuster was acting on behalf of Bridgestone/Firestone, since the adjuster contacted McRoberts after he wrote Bridgestone/Firestone at its headquarters and through its registered agent in Illinois. There is also no question that the adjuster acknowledged McRoberts' correspondence and said nothing in response to McRoberts' indication that he would withhold service in the hope of a settlement. Since a defendant certainly may waive service (see, *e.g.*, *People ex rel.*

5

*Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 566, 782 N.E.2d 237, 240 (2002)), it was reasonable for McRoberts to conclude that this arrangement was acceptable to Bridgestone/Firestone.

It is also important to note that after McRoberts filed suit, he and the adjuster continued to communicate on a monthly basis. This is not a case like *Womick*, where the plaintiff filed suit and simply failed to serve the defendant because of inadvertence or neglect. McRoberts was in active contact with an adjuster whom Bridgestone/Firestone had directed to act on its behalf, and McRoberts was acting under a reasonable assumption that his decision to withhold service was acceptable to Bridgestone/Firestone.

Equally important is that after the case was handed over to the Bridgestone/Firestone legal department, McRoberts was informed by the legal department that the adjuster had forwarded his entire file to that department. The adjuster's file most certainly included a copy of the April 24, 2003, correspondence detailing McRoberts' intention to withhold service unless the adjuster objected, as well as the adjuster's response that acknowledged McRoberts' letter but stated no objection to McRoberts' proposed arrangement. If this arrangement was unacceptable to Bridgestone/Firestone, it would have been appropriate to have raised the issue in November of 2003, when the legal department obtained the adjuster's file, instead of waiting until the end of January 2004, when it advised McRoberts, "Bridgestone/Firestone has not been properly served with the summons and complaint you indicate has been filed."

Moreover, once McRoberts received Bridgestone/Firestone's January 26, 2004, correspondence which indicated that it required service, he served it within a reasonable amount of time, on March 19, 2004. *Cf. Parker v. Piskur*, 258 Ill. App. 3d 344, 347, 630 N.E.2d 475, 477-78 (1994) (the plaintiff's delay in service was excused when settlement negotiations were active but was not excused when the plaintiff waited 16 months after

6

settlement negotiations had ended and 18 months after the suit had been filed).

We also find to be reasonable McRoberts' assumption with regard to service, since it was in both parties' interests to try to resolve the matter if possible before service was accomplished. Products liability cases, such as this one, can be extremely expensive to litigate. Therefore, it was not unreasonable for the parties to have engaged in informal discovery to see if the evidence demonstrated that the case could be resolved before the parties began formally litigating and incurring large expenses. We certainly encourage the amicable resolution of litigated matters and do not look to dissuade parties from engaging in good-faith informal discovery so that an early settlement may be explored. In this case, it was obviously in McRoberts' interest to settle as soon as possible, and it was also in Bridgestone/Firestone's interest because it was conducting discovery informally and inexpensively by receiving medical records and bills, as well as the opportunity to inspect the tires at issue, from McRoberts without the expense of hiring local attorneys or sending its in-house attorneys to Saline County.

Further, by engaging in informal discovery, Bridgestone/Firestone was able to review the plaintiff's medical records, as well as the product in question, without subjecting itself to the much more expansive discovery normally conducted once litigation proceeds more formally. Bridgestone/Firestone avoided the customary broad and demanding discovery requests regarding everything from prior claims and knowledge of design or manufacturing defects to the disclosure of all statements or facts gathered by the defendant's staff, attorneys, or investigators. Given this situation, we cannot embrace imposing the harsh results of a dismissal with prejudice upon a plaintiff who cooperated with the defendant's informal discovery requests, which advanced the interests of both parties, in the hope of settling the case short of active litigation. In fact, Bridgestone/Firestone's motion to dismiss for a failure to act with reasonable diligence in effecting service strikes us as disingenuous, rather than

7

reflecting a legitimate effort to advance an important right or to protect against a serious prejudice.

We also consider the special circumstances these facts present in conjunction with the other factors a court may consider listed above, such as the defendant's knowledge of the lawsuit prior to the service of process and the lack of prejudice to the defendant. First, there is no question that Bridgestone/Firestone was aware of the lawsuit, since the adjuster that it instructed to act on its behalf had been informed of the lawsuit by McRoberts' April 24, 2003, correspondence after he filed the complaint. Further, we find no prejudice to Bridgestone/Firestone because of the delay, since the tires–which it indicated on many occasions were key to its decision regarding liability–had been preserved by McRoberts and made available to its adjuster and its legal department for inspection.

Therefore, after balancing these factors and the special circumstances McRoberts presented to the trial court, we find that the trial court abused its discretion in dismissing McRoberts' complaint for a failure to act with reasonable diligence in effecting the service of process on Bridgestone/Firestone. Accordingly, we reverse the decision of trial court and remand for further proceedings.


Reversed; cause remanded.


SPOMER, P.J., and DONOVAN, J., concur.

8

NO. 5-04-0781

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| ROBERT McROBERTS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Saline County. |
| | ) |
| v. | ) No. 03-L-29 |
| | ) |
| BRIDGESTONE AMERICAS HOLDING, | ) |
| INC., d/b/a BRIDGESTONE/FIRESTONE | ) |
| NORTH AMERICAN TIRE, LLC, | ) |
| | ) |
| Defendant-Appellee, | ) |
| | ) |
| and | ) |
| | ) |
| SOUTHERN ILLINOIS TIRE OF | ) |
| HARRISBURG, INC., | ) Honorable |
| | ) Brocton Lockwood, |
| Defendant. | ) Judge, presiding. |

**Opinion Filed**: June 5, 2006

**Justices**: Honorable Stephen P. McGlynn, J.

Honorable Stephen L. Spomer, P.J., and
Honorable James K. Donovan, J.,
Concur

**Attorney for Appellant**: Charles H. Stegmeyer, Stegmeyer & Stegmeyer, Ltd., 100 South Charles Street, Suite 100, Belleville, IL 62220

**Attorneys for Appellee**: Robert W. Vyverberg, Lisa A. Ellis, Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603; James B. Bleyer, Bleyer & Bleyer, 601 West Jackson Street, Marion, IL 62959