# Illinois Official Reports

## Appellate Court

---

### *Kramer v. Ruiz*, 2021 IL App (5th) 200026

---

| | |
|---|---|
| Appellate Court Caption | MARC KRAMER, Personal Representative of the Estate of Steven Greene, Deceased, Plaintiff-Appellant, v. GABRIEL RUIZ, Defendant-Appellee. |
| District & No. | Fifth District<br>No. 5-20-0026 |
| Filed<br>Rehearing denied | May 20, 2021<br>June 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 18-L-1710; the Hon. David W. Dugan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lanny Darr, of Darr Law Offices, Ltd., of Alton, and Jennifer Suttmoeller Bernacki, of Cervantes & Associates, of St. Louis, Missouri, for appellant.<br><br>Jane Unsell and Erin M. Phillips, of Unsell, Schattnik & Phillips, P.C., of Wood River, for appellee. |

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Welch concurred in the judgment and opinion.
Justice Cates dissented, with opinion.


**OPINION**

¶ 1       Plaintiff Marc Kramer, personal representative of the estate of Steven Greene, deceased, filed a complaint in the circuit court of Madison County for wrongful death against the defendant, Gabriel Ruiz. After the defendant was served with an alias summons, he filed a motion to dismiss the complaint pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), asserting that the plaintiff failed to exercise reasonable diligence in effectuating the service on the defendant. Following a hearing on the motion, the circuit court granted the defendant's motion and dismissed the complaint with prejudice. For the reasons that follow, we affirm the circuit court's dismissal of the plaintiff's case.

¶ 2                                    I. BACKGROUND
¶ 3       The underlying matter arises out of a December 22, 2016, automobile/pedestrian collision that resulted in the death of Steven Greene. On December 18, 2018, four days prior to the expiration of the applicable statute of limitations, the plaintiff filed a complaint and summons against the defendant for wrongful death arising from that accident. The circuit court's docket sheet reveals that, on December 20, 2018, a summons was issued for the defendant and sent to the plaintiff's counsel via "efile"[1] for counsel to effectuate service. No further action was taken on this case by the plaintiff or plaintiff's counsel. On May 1, 2019, the circuit court set the matter for a case management conference to be held on August 21, 2019.

¶ 4       On August 9, 2019, nearly eight months after the complaint was filed and the statute of limitations had expired, plaintiff's counsel, Jennifer Suttmoeller, took her first action towards effecting service on the defendant when she requested, and the circuit clerk issued via "efile," an alias summons for the defendant. Eleven days later, on August 20, 2019, the defendant was served with the alias summons and a copy of the plaintiff's complaint.

¶ 5       On September 19, 2019, counsel for the defendant entered his appearance and filed a motion to dismiss the plaintiff's complaint pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). The motion alleged that the plaintiff failed to exercise reasonable diligence in serving process on the defendant after the expiration of the statute of limitations. The defendant also attached to his Rule 103(b) motion the Illinois traffic crash report regarding the accident at issue and an affidavit, dated September 18, 2019, which had been executed by the defendant. In his affidavit, the defendant listed his address at the time of the accident and asserted that he had not changed addresses since December 2016. The defendant further stated that he had not been employed outside of his home since December 18, 2018, and that he did not attempt to

---

[1]On January 22, 2016, the Illinois Supreme Court entered an order amending M.R. 18368, announcing mandatory e-filing or electronic filing of civil cases in the Illinois supreme, appellate, and circuit courts. Ill. S. Ct., M.R. 18368 (eff. Jan. 22, 2016). That same order required the electronic filing through a single, centralized electronic filing manager called eFileIL. That databased is often simply referenced using the term "efile."

evade service. The Illinois traffic crash report listed the defendant's address as the same set forth in the defendant's affidavit.

¶ 6 On November 20, 2019, the plaintiff filed a response to the defendant's motion to dismiss. In his response, the plaintiff argued that the defendant was not deprived of a fair opportunity to investigate the circumstances upon which liability against the defendant was predicated while the facts were accessible and that the plaintiff had not intentionally delayed service of process on the defendant. Attached to his response to the defendant's motion to dismiss, the plaintiff also submitted several documents, including (1) an affidavit that had been executed by the defendant on January 17, 2017, (2) correspondence between the defendant's co-attorneys Kacerovskis and Unsell, (3) correspondence from the plaintiff's attorney Leonard Cervantes, (4) a computer printout of the circuit court docket, (5) an affidavit from the plaintiff's counsel, and (6) a copy of the alias summons served upon the defendant.

¶ 7 The defendant's January 17, 2017, affidavit stated that he "was involved in a motor vehicle collision on December 22, 2016[,] in Madison County, Illinois" and that he had only one insurance policy that was applicable to the accident, which was from Traveler's Insurance. He also provided the policy number for the insurance policy. On January 18, 2017, Unsell sent the defendant's affidavit to Kacerovskis.

¶ 8 The Leonard Cervantes correspondence attached to the plaintiff's response was faxed to Traveler's Insurance on June 21, 2017. That document stated that Cervantes & Associates had assumed representation of the plaintiff regarding the December 22, 2016, automobile/pedestrian accident. The letter stated that the firm of Cervantes & Associates was to receive a percentage of any amount recovered "whether by compromise or by suit."

¶ 9 Plaintiff's counsel, Jennifer Suttmoeller, also filed an affidavit to support the plaintiff's response. In that affidavit, plaintiff's counsel stated that she was the attorney for the plaintiff and had requested a summons on the date she filed the wrongful death complaint against the defendant. She further denied that she ever received notice that the summons was issued on December 20, 2018, as reflected by the "Madison County Circuit Court Docket Sheet." She also denied she ever received notice that the court, on May 1, 2019, set the matter for a case management conference. Instead, plaintiff's counsel alleged that she discovered the notice of the case management conference on "the Madison County Circuit Court's website" sometime in July 2019. Plaintiff's counsel then alleges that this event led to the realization that the original summons was never served and prompted her to request that an alias summons be issued by the circuit court on August 9, 2019. The affidavit also indicated that plaintiff's counsel was out of the office for extended periods of time during the months of March and April 2019.

¶ 10 On November 21, 2019, the circuit court heard arguments from the parties regarding the defendant's motion to dismiss. Following the hearing, the court took the matter under advisement. The court also directed the plaintiff to file a supplemental affidavit and allowed the defendant to file a brief in response to the plaintiff's cases cited during the hearing.

¶ 11 On November 26, 2019, plaintiff's counsel filed her supplemental affidavit. In the affidavit, counsel stated that she was an associate with the law firm of Cervantes & Associates in St. Louis, Missouri, and that the law firm was owned and operated by Leonard Cervantes "until his unexpected death on June 23, 2018." Plaintiff's counsel attested that "[p]rior to his death, this matter was solely being handled by Leonard Cervantes." Further, she stated that Mr. Cervantes's "untimely and unexpected death left the office personnel to figure out the status

of several matters previously *** handled by Mr. Cervantes, including administrative issues." The plaintiff's file was ultimately identified, and the lawsuit was filed four days prior the expiration of the statute of limitations.

¶ 12　　The plaintiff's counsel next averred that she had never handled any Illinois cases without supervision from Cervantes and she "mistakenly believed the Madison County Circuit Clerk's office would prepare and return the summons to [her] for service." Plaintiff's counsel denied receiving the summons issued by the circuit clerk's office. Plaintiff's counsel went on to explain that when she did not receive the summons shortly after filing the complaint on December 18, 2018, she assumed it was due to the Christmas and New Year's Eve holidays. Plaintiff's counsel admitted that, "[d]ue to the press of other business, [she] failed to follow up to secure the summons." Plaintiff's counsel then stated that she suffered from a chronic medical condition, multiple sclerosis, that required her to take an extended leave of absence from her work during March and April of 2019. This leave of absence "compounded the backload of work at Cervantes & Associates," which was still shorthanded due to Cervantes's unexpected death. Finally, plaintiff's counsel ended her affidavit by stating that her "failure to serve [the defendant] shortly after the expiration of the statute of limitations was due to inadvertence" and further that she could not identify any "harm or prejudice that resulted to [the defendant] for the delay in service of summons."

¶ 13　　On November 27, 2019, the defendant filed his memorandum in support of his motion to dismiss, which addressed the cases they had referenced during the hearing on the motion to dismiss.

¶ 14　　On December 30, 2019, the circuit court entered its order granting the defendant's motion to dismiss. In its order, the court found that the "record reflects that nothing transpired in the case until an [a]lias [s]ummons was issued by the [c]lerk on August 9, 2019" and that the "record does not reveal an affidavit of service," but that the defendant had testified he was served on August 20, 2019, and had entered his appearance for the purposes of filing the motion to dismiss.

¶ 15　　In its analysis, the circuit court stated:

> "In this case, the [p]laintiff waited until just before the expiration of the statute of limitation before filing suit. There was no apparent attempt on the part of the [p]laintiff to secure service on the [d]efendant during the period of over 8 months following filing suit. And, the [p]laintiff offers very little in way of reason or excuse for the delay in obtaining service except to say that counsel 'was out of the office for an extended period of time in March and April, 2019.' *** [The p]laintiff provides the [c]ourt with no justification for the delay of the remaining 6 month period."

¶ 16　　The circuit court then found that "there is nothing in the record that would suggest that the activities of the [d]efendant served to inhibit or prevent service of process upon him," noting that his address was the same as that listed on the accident report. The circuit court acknowledged that the plaintiff's prior counsel had communicated with the defendant regarding a possibility of a claim, but that "contact predated the filing of the lawsuit, and it appears from the record that more than 2 ½ years would pass before Defendant heard from the Plaintiff or his counsel again." Further, nothing suggests that the defendant was aware of the pendency of the case or that he was a named party in the case until he was served with the complaint.

¶ 17    The circuit court then determined that the passage of eight months was "lengthy" and that "inaction for that period of time tends to frustrate the purpose of and policy behind Rule 103(b)." The court concluded that, under the facts of this case, "it cannot be said that the [p]laintiff was reasonably diligent in effectuating or even attempting service after filing suit" and, further, that the plaintiff failed to provide "a countervailing explanation for the delay and inaction." This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, the plaintiff contends that the circuit court abused its discretion in dismissing the plaintiff's complaint with prejudice pursuant to Rule 103(b). We disagree. For the reasons that follow, we find that the circuit court did not abuse its discretion in dismissing the plaintiff's lawsuit.

¶ 20    Rule 103(b) provides that, if the plaintiff fails to exercise reasonable diligence to obtain service on a defendant after the statute of limitations has expired, the circuit court may dismiss the matter and that such dismissal shall be with prejudice. Ill. S. Ct. R. 103(b) (eff. July 1, 2007). In considering whether the plaintiff exercised reasonable diligence, the circuit court is to consider the totality of the circumstances. *Id.* This court reviews the circuit court's grant of a dismissal pursuant to Rule 103(b) for an abuse of discretion. *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990). "A trial court abuses its discretion when its decision is '*arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view*.' " (Emphasis added.) *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 14 (quoting *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005)).

¶ 21    Rule 103(b) does not set forth any specific time limitation within which a defendant must be served, but the rule has the essential purpose of promoting the expeditious handling of lawsuits by giving the circuit courts wide discretion to dismiss when service is not effectuated with reasonable diligence. *Segal*, 136 Ill. 2d at 285-86. The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process and to prevent circumvention of the statute of limitations. *Id.* at 286. The plaintiff bears the burden of showing reasonable diligence in the service of process and must provide a reasonable explanation for any apparent lack of diligence. *McRoberts v. Bridgestone Americas Holding, Inc.*, 365 Ill. App. 3d 1039, 1043 (2006).

¶ 22    The court is to apply an objective standard when determining whether a plaintiff exercised reasonable diligence in effecting service of process, with each case turning on its own specific facts. *Id.* at 1042. The determination of whether a plaintiff failed to exercise reasonable diligence is a fact-intensive inquiry suited to balancing, not bright lines. *Id.* When deciding whether to grant dismissal pursuant to Rule 103(b), the circuit court should consider the following factors: (1) the length of time used to obtain service of process, (2) the activities of the plaintiff, (3) the plaintiff's knowledge of the defendant's location, (4) the ease with which the defendant's whereabouts could have been ascertained, (5) the defendant's knowledge of the pendency of the lawsuit, (6) special circumstances which would affect the plaintiff's efforts, and (7) actual service on the defendant. *Segal*, 136 Ill. 2d at 287. These factors must be contemplated in light of the purpose of Rule 103(b). *Id.* However, it is well settled that dismissal under Rule 103(b) is within the sound discretion of the circuit court. *Id.* at 286. "In determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely." *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002).

¶ 23    Thus, the question before this court is whether the circuit court abused its discretion in finding that the plaintiff did not use reasonable diligence in obtaining service upon the defendant. In other words, we must decide whether the circuit court's determination that the plaintiff failed to use reasonable diligence in serving the defendant following the filing of the lawsuit was arbitrary, fanciful, unreasonable, or whether no reasonable person would adopt the circuit court's view. We find this standard is not met.

¶ 24    As noted above, in

> "making a decision on a Rule 103(b) motion, the trial court should consider the following factors: (1) the length of time used to obtain the service of process, (2) the activities of the plaintiff, (3) the plaintiff's knowledge of the defendant's location, (4) the ease with which the defendant's whereabouts could have been ascertained, (5) special circumstances that would affect the plaintiff's rights, and (6) actual service on the defendant." *McRoberts*, 365 Ill. App. 3d at 1042-43 (citing *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377 (1990)).

"The plaintiff has the burden of showing reasonable diligence in the service of process and must give a reasonable explanation for any apparent lack of diligence." *Id.* at 1043 (citing *Marks v. Rueben H. Donnelley, Inc.*, 260 Ill. App. 3d 1042, 1047 (1994)).

¶ 25    When reviewing the facts of this case, we first note that the amount of time that elapsed between the filing of the lawsuit and the ultimate service on the defendant was approximately eight months. While it is true that Rule 103(b) does not set forth any specific limitation within which a defendant must be served, Illinois courts have held on numerous occasions that such a delay is sufficient to warrant dismissal. See, *e.g.*, *Womick*, 137 Ill. 2d at 380-81 (Illinois Supreme Court found dismissal with prejudice not an abuse of discretion where plaintiff never attempted to serve the defendant at a known location for a period of nine months following the filing of the lawsuit); *Luebbing v. Copley Memorial Hospital*, 60 Ill. App. 3d 780, 781 (1978) (the plaintiff did not place summons until 10 months after the lawsuit was filed); *Penrod v. Sears, Roebuck & Co.*, 150 Ill. App. 3d 125, 129 (1986) (appellate court found the plaintiff failed to exercise due diligence where the plaintiff only made minimal efforts to obtain service over a period of seven months). Thus, the eight-month delay in this case is sufficient for a circuit court to find in favor of dismissal.

¶ 26    Therefore, we now look at the remaining facts of this case to determine if the circuit court's finding of the plaintiff's lack of due diligence in serving the defendant is unreasonable.

¶ 27    When considering the factors the circuit court weighed, it is evident that nearly all the factors weigh in support of the defendant's position and the circuit court's determination to dismiss. Specifically, the factors included an eight-month delay in completing the service, the plaintiff's failure to attempt to serve the defendant from the time of filing until the actual service,[2] the plaintiff's counsel's knowledge of the defendant's location as it was listed on the

---

[2]Following the filing of the lawsuit, the court's docketing sheet indicates that on December 20, 2018, a summons was issued and forwarded to the plaintiff's counsel via efile for service on the defendant. Plaintiff's counsel, in her supplemental affidavit responding to the defendant's Rule 103(b) motion, denies ever receiving this summons, stating: "I did not receive [the summons] shortly after filing, [and] I assumed it was due to the Christmas and New Year's holiday. Due to the press of other business, I failed to follow up to secure the summons." Thus, while a summons appears to have been issued following the filing of the case, there was never an attempt by the plaintiff's counsel to serve

Illinois traffic crash report, the fact that the defendant's address did not change during the three years following the accident prior to service, and, finally, the short time it took for the defendant to be served following the first attempt of service by the plaintiff's counsel in August 2019. They all demonstrate the ease with which service could have occurred earlier. Therefore, the only factor that could weigh in favor of nondismissal is the special circumstances factor.

¶ 28 The plaintiff's counsel argues that the following circumstances combined together to result in the eight-month delay: (1) the unexpected death of her supervising attorney 6 months prior to the expiration of the statute of limitations and 14 months prior to service on the defendant, (2) the counsel's failure to receive the summons from the Madison County circuit clerk's office, and (3) the counsel's having to take an extended leave of absence during March and April of 2019 due to her chronic medical condition, multiple sclerosis. The plaintiff's counsel explains that the death of her colleague combined with her leave of absence created a backlog of work in the law firm.

¶ 29 In considering whether these special circumstances rise to a level to excuse such a delay in service, we find *Sinn v. Elmhurst Medical Building, Ltd.*, 243 Ill. App. 3d 787 (1993), to be instructive, given its factual similarities to this matter. In *Sinn*, the plaintiff who had suffered a slip-and-fall injury hired an attorney, Donald Ramsell, to represent him. *Id.* at 788. Following the forming of the attorney-client relationship, on December 28, 1990, Ramsell filed the lawsuit against the three suspected defendants; however, no summonses were issued at the time of filing. Instead, Ramsell began conducting a property tract search of the subject premises to further confirm the owner of the relevant properties. *Id.* On January 21, 1991, the plaintiff informed Ramsell that he no longer wished for Ramsell to represent him. *Id.* On January 24, 1991, Ramsell informed the plaintiff that summons had not been issued and that the plaintiff " 'must serve summons on defendants as soon as possible.' " *Id.* On March 28, 1991, the circuit court granted Ramsell leave to withdraw as plaintiff's counsel. *Id.* On April 5, 1991, the plaintiff retained a new law firm, Botti, Marinaccio, DeSalvo & Tameling, Ltd. (Botti), to represent him. *Id.* Following this arrangement, a fee dispute occurred between the plaintiff and Ramsell. *Id.* As a result, Ramsell refused to release the plaintiff's file until late May 1991, and the plaintiff finally obtained his file on July 11, 1991. *Id.* One of the defendants was then served on September 3, 1991, 8 months following the filing of the lawsuit, and the remaining two defendants were served on December 16, 1991, 11 months following the filing of the lawsuit. *Id.* It is important to note that the slip-and-fall was reported to one of the defendants at the time of the occurrence, and thus, at least one of the defendants did have notice of a possible lawsuit. *Id.* Following service, the defendants filed a motion to dismiss the lawsuit pursuant to Rule 103(b). *Id.* at 789. The circuit court granted the 103(b) motion to dismiss, dismissing the case with prejudice, and the plaintiff appealed. *Id.*

¶ 30 On appeal, the plaintiff contended "that 'special circumstances' existed due to the conflict with his former attorneys and the illness of his mother during the pendency of the suit," which prevented him from being able to timely serve the defendants. *Id.* at 790. However, our colleagues in the Second District upheld the circuit court's dismissal under these circumstances. *Id.* at 790-92. The court found that the plaintiff had made no effort to serve the defendants between the time of filing and actual service. *Id.* at 792. Additionally, the plaintiff

---

that summons on the defendant or any attempt by her to follow up with the circuit clerk's office as to the reason she did not receive it.

offered no reasons or special circumstances as to why no attempts were made to serve the defendants during the 4½ months following the settling of the dispute with Ramsell and the obtaining of his file. *Id.* at 791-92. The court found that the only factors the plaintiff identified as being favorable to him were that the defendants had actual notice of the occurrence and presumably were not prejudiced by the delay. *Id.* at 790, 792. The court then noted that the Illinois Supreme Court in *Womick* "held that actual notice of the suit and a lack of prejudice will not necessarily preclude dismissal under Rule 103(b), since these are merely two of the factors to be considered." *Id.* at 792 (citing *Womick*, 137 Ill. 2d at 377).

¶ 31     When comparing *Sinn* and the present matter, we find that *Sinn* offered as much, if not more, special circumstances explaining the service delay than the present matter, yet the *Sinn* court, applying the abuse of discretion standard, still upheld the circuit court's dismissal. In *Sinn*, the plaintiff was not certain of who owned the property, and thus, the defendants were not exactly known at the time of filing. Here, the defendant was known and so was the defendant's address. In *Sinn*, the plaintiff lost three or four months, during which time service could have been effectuated, due to the change of attorneys and subsequent fee dispute that resulted in his file being "held hostage." In this matter, time is also claimed to have been lost due to the plaintiff's counsel's illness of approximately two months. When considering that circumstance in *Sinn*, the court chose to exclude that amount of time and, instead, focused on the 4½ months in which the plaintiff could have served the defendants but failed to do so. While we make no determination of whether or not a court is required to take such a step, likewise, here, once we remove the two months due to illness, we are left with six months in which service could have been effectuated—approximately two months more than that available to the plaintiff in *Sinn*. Finally, when we examine the circumstances more broadly, we have two significant special circumstances offered in both cases which the plaintiffs claim combined to form a perfect storm resulting in delayed service of process. In *Sinn*, it was the plaintiff's file being held hostage and his mother's illness; here, it is the plaintiff's counsel's illness and the sudden death of a colleague resulting in an increased workload. While special circumstances are offered by plaintiff's counsel to explain portions of the delay, there exists in the present case, as in *Sinn*, several months of time in which the defendant could have been served and was not, without any attempt at service or any sufficient explanation for the lack of an attempt at service.

¶ 32     Additionally, we acknowledge that, according to plaintiff's counsel, an issue with the summons occurred that resulted in her never receiving it following the filing of the lawsuit. However, this "special circumstance" does not weigh in her favor. As plaintiff's counsel states in her own affidavit, she was aware that she never received the summons from the circuit clerk's office, and she failed to follow up with it regarding the status of the summons "due to the press of other business." It is well established that attorneys have a duty to track and monitor their cases and learn of developments in said cases, such as upcoming hearing dates. *Tiller v. Semonis*, 263 Ill. App. 3d 653, 657 (1994). Therefore, if an issue did occur in the e-filing system that prevented the plaintiff's counsel from receiving the initial summons, counsel still had a duty to monitor the case and discover such an issue. A quick review of the court's docket sheet for this case, which at the time of filing should have been available to plaintiff's

counsel online,[3] would have revealed that the circuit court had issued the summons on December 20, 2018, and would have alerted counsel that she needed to follow up to ensure she obtained the summons so that service could be timely effectuated. Further, the plaintiff's counsel's claim that she did not follow up with the circuit clerk's office regarding the summons because of the "press of other business" is not a sufficient excuse. While we can understand that counsel's workload increased following the death of her colleague, by this time, at least six months had passed, which should have allowed counsel enough time to regain control over the handling of the firm's cases. Further, the death of a colleague, while tragic, does not alleviate the plaintiff's counsel from her duty of monitoring developments in her cases.

---

[3]This court "may take judicial notice of readily verifiable facts if doing so 'will "aid in the efficient disposition of a case," ' even if judicial notice was not sought in the trial court." *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (quoting *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 725 (2009)). The ability of an appellate court to "take judicial notice of information on a public website even though the information was not in the record on appeal" has also been recognized by Illinois courts. *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9; see also *People v. Clark*, 406 Ill. App. 3d 622, 633-34 (2010) (reliability of "mainstream Internet sites" such as Map Quest and Google Maps warrant judicial notice). Further, "[appellate courts] can take judicial notice of the computer docket sheets under [the Illinois Supreme Court's decision in *People v. Davis*, 65 Ill. 2d 157 (1976)]." *People v. Johnson*, 2020 IL App (1st) 171638, ¶ 29 (in *Johnson*, the appellate court took judicial notice of submitted computer printouts which purported to be copies of the circuit court docket); see also *People v. Davis*, 65 Ill. 2d 157, 164-65 (1976) (the Illinois Supreme Court held, "In our judgment, the extension of the doctrine of judicial notice to include facts which, while not generally known, are readily verifiable from sources of indisputable accuracy is an important aid in the efficient disposition of litigation, and its use, where appropriate, is to be commended.").

On January 22, 2016, our supreme court entered an order amending M.R. 18368 that mandated electronic filing of civil cases throughout the State of Illinois beginning January 1, 2018. Ill. S. Ct., M.R. 18368 (eff. Jan. 22, 2016). On May 30, 2017, the supreme court amended the order M.R. 18368 which further required all Illinois circuit courts to "make available their case documents and information to the statewide remote access system known as re:SearchIL" by no later than July 1, 2018. Ill. S. Ct., M.R. 18368 (eff. May 30, 2017). Therefore, by the time of the filing of this lawsuit in December of 2018, plaintiff's counsel should have had available to her the state's electronic filing system, which our supreme court mandated to be in place and operational prior to the initial filing of this matter. Additionally, the order further allowed courts to continue "to utilize other remote access systems in addition to re:SearchIL." *Id.* This court is aware that the Madison County circuit clerk office's public website has maintained for a number of years a public online records database, which is still currently maintained and located at "clericusmagnus.com." That database contains and displays certain public records and online docket sheets for Madison County court cases. Therefore, plaintiff's counsel should have had at least two different avenues to remotely monitor the case online, which, if used, should have allowed her to quickly recognize the issue with the summons immediately after the docket sheet was updated showing that a summons had been issued and sent to her via efile. Additionally, plaintiff's counsel avers in her initial affidavit that she ultimately used this website in July of 2019 to discover that summons had not been served.

Assuming, *arguendo*, that these systems were not available to plaintiff's counsel or that the systems experienced some type of technical error (an argument not raised by any party before this court), it does not absolve the duty of the plaintiff's counsel to timely monitor the case. A phone call to the circuit clerk's office to inquire about the status of the summons would have been an equally effective and quick manner to learn of the issue.

¶ 33 "Although prevention of intentional delay in the service of summons was a primary reason for the adoption of the rule and its predecessors, Rule 103(b) is not based upon the subjective test of plaintiff's intent, but, rather, upon the objective test of reasonable diligence in effecting service." *Cannon v. Dini*, 226 Ill. App. 3d 82, 86 (1992) (citing *Parker v. Universal Packaging Corp.*, 200 Ill. App. 3d 882, 886 (1990)); see also *Caliendo v. Public Taxi Service, Inc.*, 70 Ill. App. 2d 86, 88 (1966); *Karpiel v. La Salle National Bank of Chicago*, 119 Ill. App. 2d 157, 160-61 (1970); *Phifer v. Hayes*, 20 Ill. App. 3d 635, 638-39 (1974). Thus, the fact that the delay may have been due to inadvertence, as argued by the plaintiff's counsel, is not solely determinative of the issue before us; instead, the standard of reasonable diligence is what ultimately controls.

¶ 34 The dissent in this case relies heavily on the supreme court case of *Segal*, 136 Ill. 2d 282; however, this reliance is misplaced. In *Segal*, a 4½-month delay in the service of process occurred because the plaintiff's counsel simply forgot to have the summons issued and served on the defendant. *Id.* at 287. The circuit court granted the defendants' subsequent Rule 103(b) motion to dismiss with prejudice. *Id.* at 285. The appellate court found that the "length of time used to obtain service of process[ ] is determinative," and "the time here was simply too short to permit dismissal with prejudice of the entire action." *Segal v. Sacco*, 175 Ill. App. 3d 504, 506 (1988). Ultimately, our supreme court in its review of the matter upheld the finding of the appellate court and overturned the circuit court's Rule 103(b) dismissal. *Segal*, 136 Ill. 2d at 289. Importantly, there is a crucial difference between the *Segal* case and the one presently at hand. In *Segal*, the delay of service on the defendants was approximately 4½ months. The delay in the present matter is eight months, nearly double that of the delay in *Segal*. The dissent seems to argue that *Segal* stands for the proposition that if the plaintiff lacks intention to cause a delay, the delay is "inadvertent," and inadvertence alone can excuse the reasonable diligence requirement. This is an incorrect interpretation of the holding in *Segal*. The *Segal* court actually held as follows:

> "In this case, because the length of the delay in the service of process was such that the purpose of Rule 103(b) would not be served by dismissing plaintiff's action, the allowance of defendants' Rule 103(b) motion by the circuit court was an abuse of discretion. It would not be an abuse of discretion for a circuit court to allow a dismissal with prejudice under Rule 103(b) for a delay equal to or shorter than the delay present in this case if the delay occurs under circumstances which serve to deny the defendants a 'fair opportunity to investigate the circumstances upon which liability against [the defendants] is predicated while the facts are accessible.' " *Id.* (quoting *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90 (1954)).

¶ 35 Thus, where an approximately 4½-month delay in service occurs, that length of time is too short to solely support a circuit court's dismissal under Rule 103(b). In other words, that length of time alone is not sufficient to support a dismissal under Rule 103(b) where the delay was truly inadvertent and did not result in prejudice to the defendant. Instead, in order for a dismissal to be warranted following a delay of only 4½ months, the circuit court would need to also find that the delay was intentional or resulted in the defendants being prejudiced or handicapped in their defense in some manner.

¶ 36 The present case is more analogous with supreme court case, *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371 (1990). *Womick* was a unanimous decision by the supreme court, decided only seven days following *Segal*. In *Womick*, the supreme court upheld the

circuit court's granting of the defendant's Rule 103(b) motion to dismiss where the plaintiff's counsel failed to serve the defendant until nine months after filing the action. Factually, the *Womick* case is similar to the present case in that the plaintiff's counsel knew where to serve the defendant, the defendant had knowledge of the intention of the plaintiff to file a lawsuit, the filing of the lawsuit occurred just before the expiration of the statute of limitations, and the plaintiff's counsel made no attempts to serve the defendant until service was effectuated nine months after filing. The supreme court, in upholding the circuit court's dismissal, looked at other cases of similar lengths of delay in service, such as *Luebbing*, 60 Ill. App. 3d at 781 (the plaintiff made no effort to serve defendant for a period of 10 months), and *Penrod*, 150 Ill. App. 3d at 129 (the plaintiff only made minimal efforts to obtain service over a seven-month period). Thus, while *Segal* may be instructive in a case where the length of delay alone is too short to warrant dismissal, here, where the delay is nearly double that of *Segal*, the more analogous and instructive cases are *Womick* and *Sinn*.

¶ 37 Reiterating the words of our supreme court, "[i]n determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely." *Simmons*, 198 Ill. 2d at 568. While we are sympathetic to the position of plaintiff's counsel following the death of her colleague, and especially sympathetic to her struggle with a chronic illness, this court does not have the authority to substitute its judgment for that of the circuit court when it is applying an abuse of discretion standard. See *id.* Thus, being mindful of the applicable standard of review, which states that a circuit court abuses its discretion when no reasonable person would take the view adopted by the circuit court, we find that a reasonable person could adopt the view taken by the circuit court in this case, as evidenced by the legal precedents set in the holdings discussed above.

¶ 38                                    III. CONCLUSION

¶ 39 For the foregoing reasons, we find that the circuit court did not abuse its discretion and affirm the dismissal of the lawsuit with prejudice.

¶ 40 Affirmed.

¶ 41 JUSTICE CATES, dissenting:

¶ 42 Illinois Supreme Court Rule 103(b) (eff. July 1, 2007) is intended to protect defendants from stale claims resulting from unnecessary delay in the service of process and to prevent circumvention of the statute of limitations. *Segal*, 136 Ill. 2d at 286. Whether a plaintiff has met the burden of demonstrating reasonable diligence in the service of process is a decision within the sound discretion of the circuit court. *Id.* In reviewing a discretionary ruling of the circuit court, an appellate court considers not only whether the circuit court's decision was so arbitrary, fanciful, or unreasonable that no reasonable person would take the view it adopted, but also whether the court's decision rests upon an error of law. See *Silverberg v. Haji*, 2015 IL App (1st) 141321, ¶ 34; *People v. Ortega*, 209 Ill. 2d 354, 360 (2004); *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993) (trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts). When a circuit court's decision rests upon an error of law, then an abuse of discretion has occurred. *Silverberg*, 2015 IL App (1st) 141321, ¶ 34. After reviewing the record, I find that the circuit court failed to consider relevant

factors in ruling on the defendant's motion to dismiss under Rule 103(b) and that its decision rested on an error of law and was, therefore, an abuse of discretion.

¶ 43    Rule 103(b) provides that if the plaintiff fails to exercise reasonable diligence to obtain service on a defendant after the statute of limitations has expired, the circuit court may dismiss the matter and that such dismissal shall be with prejudice. Ill. S. Ct. R. 103(b) (eff. July 1, 2007). Rule 103(b) does not set forth any specific time limit within which a defendant must be served. The rule has an essential purpose of promoting the expeditious handling of lawsuits by giving the circuit court wide discretion to dismiss when service is not effectuated with reasonable diligence. *Segal*, 136 Ill. 2d at 286. The plaintiff bears the burden of showing reasonable diligence in the service of process and must provide a reasonable explanation for any apparent lack of diligence. *McRoberts*, 365 Ill. App. 3d at 1043. The dismissal of a cause of action with prejudice under Rule 103(b) is "a harsh penalty which is justified when the delay in service of process is of a length which denies a defendant a 'fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible.' " *Segal*, 136 Ill. 2d at 288 (quoting *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90 (1954)). In considering whether the plaintiff exercised reasonable diligence in the service of process, the circuit court is to consider the totality of the circumstances. Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 44    In *Segal*, our supreme court set forth the following nonexhaustive list of factors for courts to consider when deciding whether to grant dismissal pursuant to Rule 103(b):

> "(1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant." *Segal*, 136 Ill. 2d at 287.

Although not determinative, courts may also consider additional factors, such as a defendant's knowledge of the lawsuit prior to service of process, the lack of prejudice to the defendant, the plaintiff's efforts to obtain service through an alias summons, the occurrence of settlement negotiations during the delay, and the plaintiff's full or timely use of all available resources for determining the defendant's whereabouts. See *McRoberts*, 365 Ill. App. 3d at 1043 (and cases cited therein). These factors are to be considered in light of the purpose of Rule 103(b). *Segal*, 136 Ill. 2d at 287.

¶ 45    While a decision on a motion to dismiss an action pursuant to Rule 103(b) is a matter within the discretion of the circuit court, the standard to be applied when determining whether a plaintiff exercised reasonable diligence in effecting service of process is an objective one, with each case turning on its own specific facts. *McRoberts*, 365 Ill. App. 3d at 1042. The determination of whether a plaintiff failed to exercise reasonable diligence is a "fact-intensive inquiry suited to balancing, not bright lines." (Internal quotation marks omitted.) *Silverberg*, 2015 IL App (1st) 141321, ¶ 32; *McRoberts*, 365 Ill. App. 3d at 1042. The court must consider the passage of time in relation to the other facts and circumstances of each case individually. *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213 (2007).

¶ 46    Here, the circuit court focused largely on the defendant and his availability for service of process. The circuit court correctly noted that a police report was written and that the defendant's address was on it. The circuit court further noted that the defendant was readily

available for service of process to be had upon him. While these were proper factors to consider, they were only two pieces of a much more complex analysis, which the circuit court declined to undertake.

¶ 47 A review of the order of dismissal indicates that the circuit court failed to consider highly relevant facts, which gave rise to the special circumstances underlying the plaintiff's delay in serving the defendant. In its order, the court stated,

"There was no apparent attempt on the part of the Plaintiff [to] secure service on the Defendant during the period of over 8 months following filing suit. And, the Plaintiff offers very little in way of reason or excuse for the delay in obtaining service except to say that counsel 'was out of the office for an extended period of time in March and April, 2019.' "

¶ 48 Notably, the circuit court did not address the unique circumstances set forth in plaintiff's pleadings, affidavits, and arguments. One of the special circumstances that the plaintiff identified was the untimely death of the senior attorney, Mr. Cervantes, who had been handling the plaintiff's case. According to the record, Mr. Cervantes was the only person in the firm who had worked on this case before his death in June 2018. He died, unexpectedly, prior to filing a complaint in this case, leaving three associates to manage his entire caseload, along with their own, and handle the administrative business of the office. In her initial and supplemental affidavits, plaintiff's counsel of record acknowledged that the complaint was filed on December 18, 2018, four days before the expiration of the two-year statute of limitations. She also noted that a request for summons was made at that time. That request is set forth in the court's docket sheet. Thus, there is some objective evidence of an attempt to obtain service on the defendant in a timely fashion.

¶ 49 In her affidavit and supplemental affidavit, plaintiff's counsel averred that while the circuit court's docket sheet indicated that the summons was issued, she never received notice of that, via the efile system. She further averred that she did not receive notice of an initial case management conference from the court or via the efiling system. Plaintiff's counsel acknowledged that she had not previously handled cases in Illinois without the supervision of Mr. Cervantes and was unfamiliar with the filing system in Illinois. My colleagues have pointed out that the circuit court's electronic docket sheet contains entries which indicate that a summons was issued to plaintiff's counsel via efile, that a case management conference was scheduled, and that this information was always available electronically. Those facts, however, cannot be viewed in isolation, but instead must be considered as a part of the totality of the circumstances. That is the rule of law applicable to this case. In this case, there are additional facts and circumstances in the record that were not considered by the trial court and the majority. As set forth in plaintiff's counsel's supplemental affidavit, her leave of absence following the death of Mr. Cervantes "compounded" the backlog of work at the law firm. In addition to the untimely death of the senior attorney, the increased demands on plaintiff's counsel resulting therefrom, and the difficulties with receiving communications and efiled notices from the court, plaintiff's counsel also experienced a health issue. Within two months after the complaint was filed, plaintiff's counsel required a two-month leave of absence due to an exacerbation of a chronic health condition—multiple sclerosis. The absence of discussion of these circumstances by the circuit court demonstrated a true lack of appreciation for what the majority has described as the "perfect storm."

¶ 50        Plaintiff's counsel also offered additional reasons to demonstrate that the delay in this case was due to inadvertence. Once plaintiff's counsel filed the complaint, she indicated a summons was requested but not received by counsel. Plaintiff's counsel, incorrectly, assumed that the holidays had delayed the issuance of the summons. She admitted that she failed to follow up due to the press of other business. When plaintiff's counsel discovered that the defendant had not been served, she requested an alias summons, and the defendant was promptly served. Thus, there are additional objective facts demonstrating that the failure to serve the original summons was inadvertent, resulting from unique special circumstances, rather than a lack of due diligence. Again, the circuit court failed to consider these facts in its order of dismissal.

¶ 51        The circuit court also noted that plaintiff "waited until just before the expiration of the statute of limitation before filing suit." This finding carries little weight where, as here, the lawsuit was timely filed. The circuit court's finding only highlights its failure to consider the special circumstances factor in this case. As noted earlier, just six months prior to the unexpected death of Mr. Cervantes, the firm's staff was required to determine the status of all the cases in the firm and handle other administrative matters formerly handled by the senior attorney. Once this case was identified, a complaint was placed on file before the statute of limitations expired. Therefore, Rule 103(b) was not used to subvert the expiring of the statute of limitations.

¶ 52        Additionally, the circuit court failed to address the plaintiff's arguments and supporting exhibits regarding a lack of prejudice to the defendant. The record demonstrates that the defendant and his attorneys were aware of the facts and circumstances of this case, as well as the potential for litigation. On January 17, 2017, just one month after the accident, the defendant executed an affidavit, admitting he was involved in the accident. Defendant's counsel and his insurance company were in possession of that affidavit, as well as the Illinois Traffic Crash Report, which also referenced a police report No. 16-1183. The Traffic Crash Report was attached to the defendant's motion to dismiss. The occurrence witnesses to the automobile/pedestrian accident were identified, and these witnesses were occupants in the defendant's vehicle. During the hearing on the motion to dismiss, the defendant's counsel advised the court that the liability was contested. Counsel claimed, "It is down on 111 in a dark area, no lighting. The plaintiff ran across the road in front of my client's vehicle and was struck. So there—it is contested liability." Based upon this record, it does not appear, nor did the defendant ever allege, that he was denied a fair opportunity to investigate the facts and circumstances upon which liability was predicated while the facts were fresh and readily accessible. See *Segal*, 136 Ill. 2d at 289. Thus, there is no indication that the eight-month period of inactivity between the filing of the complaint and the issuance and service of an alias summons caused evidence to grow stale, witnesses to become unavailable, or memories to lapse. Further, there is no indication that the delay in service threatened the circuit court's ability to proceed expeditiously with the case. See *id.* at 288.

¶ 53        The circuit court was aware of all the special circumstances, and more, but failed to include them in its analysis. My colleagues have rejected the special circumstances, finding them subjective. I disagree. The plaintiff identified facts in the record that gave rise to special circumstances, and these facts cannot be disregarded as we consider whether the circuit court abused its discretion in dismissing this case.

¶ 54        In determining whether the circumstances offered by the plaintiff rise to a level to excuse the delayed service of process, the majority finds the decisions in *Sinn v. Elmhurst Medical*

*Building, Ltd.*, 243 Ill. App. 3d 787 (1993), and *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371 (1990), to be instructive, claiming factual similarities to the case at bar. I do not agree. In *Sinn*, the plaintiff filed his complaint on the day the statute of limitations was to run. The Second District found that the plaintiff "knew that summons had not been placed and that it was important for him to do so." *Sinn*, 243 Ill. App. 3d at 790. Although there was an initial dispute among attorneys, once that was resolved, plaintiff waited another 4½ months before attempting service. In affirming the dismissal in *Sinn*, the Second District specifically found that plaintiff "made *no* effort to serve defendant for nearly eight months." (Emphasis in original.) *Id.* at 792. The *Sinn* court did not find any special circumstances that justified the inadvertence in failing to serve the defendant. Thus, *Sinn* is distinguishable from the facts in the case at bar.

¶ 55       The *Womick* case is also distinguishable on its facts. In *Womick*, our supreme court found there was no attempt to place summons for a period of almost nine months after the expiration of the statute of limitations and that no explanation had been offered for this inactivity. *Womick*, 137 Ill. 2d at 380. As with *Sinn*, the supreme court in *Womick* found that no facts were ever suggested that would have given rise to special circumstances justifying service on the defendant nine months after the filing of the complaint. *Id.* at 380-81.

¶ 56       In sum, the case before this court presents a unique set of facts and circumstances that do not fit neatly within the cases discussed by the circuit court and by the majority. Indeed, the circumstances surrounding the untimely death of Mr. Cervantes—including that he had been exclusive counsel on this case, that his death left three younger associates to manage his firm, and that plaintiff's counsel suffered a debilitating medical condition—constituted special circumstances that excused the delay in serving the defendant.

¶ 57       The record clearly shows the delay in service in this case was due to inadvertence and was not an intentional act. As noted earlier, our supreme court has recognized that the dismissal of a cause with prejudice is "a harsh penalty" that is justified when the delay in service of process is of a length which "denies a defendant a 'fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible.' " *Segal*, 136 Ill. 2d at 288 (quoting *Geneva Construction Co.*, 4 Ill. 2d at 289-90). That was not the case here. The defendant was not denied such an opportunity because of the delay in service. The plaintiff should not suffer the harsh penalty of a dismissal with prejudice where the delay in service of process was due to inadvertence and the defendant was not prejudiced by the delay.

¶ 58       In this case, the circuit court failed to consider the totality of the special circumstances and the lack of prejudice to the defendant. Thus, dismissal of the plaintiff's complaint was an abuse of discretion. Therefore, I dissent from the majority's opinion.