NOTICE
Decision filed 02/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210291-U

NO. 5-21-0291

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* ADOPTION OF M.A.E., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Michael H. and Savannah H., | ) | Madison County. |
| | ) | |
| Petitioners-Appellees, | ) | |
| | ) | |
| v. | ) | No. 19-AD-32 |
| | ) | |
| Dean T. Jr., | ) | Honorable |
| | ) | Maureen D. Schuette, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court correctly found that the respondent father never properly served process of the petition to set aside a judgment of adoption where his only attempts at service were by email and by leaving a copy of the petition in the mailbox. The petitioners did not voluntarily submit to the jurisdiction of the court where their attorney participated in status hearings and filed a motion to strike his petition to set aside judgment based on the lack of proper service but did not file any pleadings addressing the merits of his petition. The respondent father was not entitled to additional time to effectuate proper service where he did not satisfy his burden of demonstrating that he exercised due diligence in attempting to provide proper service.

¶ 2    The respondent, Dean T., is the biological father of M.A.E., the child at issue in this appeal. The petitioners, Michael H. and Savannah H., are the child's biological mother and stepfather. They filed a petition to adopt M.A.E., which was granted by the trial court. The respondent

1

subsequently filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). The court dismissed his petition on the basis that it was not properly served on the petitioners. On appeal, the respondent argues that (1) he was denied due process during the adoption proceedings because the court held a final hearing in the matter while he was incarcerated and unable to attend; (2) the court's findings of unfitness in the adoption proceedings were against the manifest weight of the evidence; and (3) the court erred in dismissing his section 2-1401 petition. We note that while the respondent filed a timely appeal from the order dismissing his section 2-1401 petition, he did not file a timely appeal from the final order in the adoption proceedings. Therefore, only his third argument is properly before us. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      M.A.E. was born to Savannah and the respondent in August 2008. Savannah subsequently married Michael.

¶ 5      On April 1, 2019, the petitioners filed a petition to adopt M.A.E. They alleged that the respondent was an unfit parent because he deserted M.A.E. (750 ILCS 50/1(D)(c) (West 2016)); he abandoned M.A.E. (*id.* § 1(D)(a)); he failed to maintain a reasonable degree of care, concern, and interest in the welfare of the child (*id.* § 1 (D)(b)); he failed to pay court-ordered child support and otherwise failed to provide financial support for the child for more than a year during which the stepfather did provide support (*id.* § 1(D)(n)(2)(ii)); he failed to provide the child with adequate food, clothing, and shelter (*id.* § 1(D)(*o*)); and he failed to maintain contact with both the child and the child's mother (*id.* § 1(D)(n)(1)). In addition, the petitioners alleged that they had the character, ability, and means to raise, nurture, and educate M.A.E., and that adoption by Michael was in the child's best interests.

¶ 6     On May 28, 2019, the court received a letter from the respondent. In it, he stated that he had been incarcerated in Jefferson County, Missouri, "on child support" between April 3 and May 18, 2019. He stated that he received a summons during that time. The respondent further averred that, at the time of his letter, he was on probation. He indicated that he intended to appear in court in the adoption proceedings. He explained, however, that he required 15 days' notice to obtain a "travel ticket" from the Missouri Probation Department in order to be permitted to leave Missouri to attend a hearing in Illinois. The respondent provided two phone numbers.

¶ 7     A June 10, 2019, docket entry states as follows: "Per Judge Mengarelli's instructions: calls were made to Dean [T.] at both numbers listed on his letter of 5/28/19. No contact was made at either number."

¶ 8     On June 19, 2019, the court held a case management conference and set a final hearing in the matter for July 25, 2019. According to the petitioners' attorney, the respondent's mother called the court on June 23, 2019, indicating that her son would not be able to attend the July 25 hearing because he was incarcerated in St. Louis County, although there is no note of this call in the docket entries. There is no indication in the record that the respondent requested a continuance or asked to participate in the hearing remotely.

¶ 9     At the beginning of the July 25, 2019, hearing, the petitioners' attorney informed the court that the respondent was incarcerated in Missouri. She stated, "I know he has not been released, so he's not going to be here." The court therefore allowed the hearing to proceed without waiting for the respondent to arrive.

¶ 10    Savannah testified that the respondent was M.A.E.'s biological father and that the last time the respondent had seen his child was in 2016. She acknowledged, however, that the respondent

asked to see the child in March 2019, after he was incarcerated for failure to pay child support. She testified that she had never done anything to preclude the respondent from contacting her.

¶ 11    When asked about financial support for the child, Savannah testified that the respondent paid court-ordered child support in June and July of 2019, but she stated that this was the first time he had done so in two years. She noted that he made these payments after she and Michael filed the petition to adopt. Savannah testified that Michael provided for M.A.E. financially and otherwise acted as a father to him. She further testified that the respondent never actively cared for his son.

¶ 12    The court found that the petitioners had proven that the respondent was unfit by clear and convincing evidence. The court then moved on to the best-interests portion of the termination hearing.

¶ 13    Both petitioners testified that Michael and M.A.E. loved each other and had bonded with each other, and that M.A.E. had also bonded with Michael's family. Michael testified that he considered M.A.E. to be his son. The court-appointed guardian *ad litem* for the child stated that she believed it was in the best interests of the child for the respondent's parental rights to be terminated and for the child to be freed for adoption. The court found that the petitioners had proven by a preponderance of the evidence that termination of the respondent's parental rights was in the child's best interests.

¶ 14    The court next considered whether being adopted by Michael was in M.A.E.'s best interests. During this portion of the hearing, the court also considered a pending petition to adopt Savannah's nephew, who had been in the petitioners' care since Savannah's sister died. Although the adoption of Savannah's nephew is not at issue, the testimony of the petitioners related to both children. The petitioners each testified that they believed that adoption would be in the best

4

interests of both boys. Savannah testified that she understood that she and Michael would have equal rights regarding the two children, and Michael testified that he understood that he would bear equal responsibility for their care and support. The guardian *ad litem* recommended that the court grant both petitions for adoption. The court ruled that it would grant the petitions.

¶ 15 That same day, the court entered an order terminating the respondent's parental rights and another order granting the petition to adopt M.A.E. In the order terminating the respondent's parental rights, the court expressly found that the respondent was served with summons and entered his appearance in the case, but did not file an answer. The court stated that the allegations in the petitioners' complaint were therefore "deemed true and confessed" by the respondent. The court further found that the respondent failed to appear at the hearing despite having notice. The court found the respondent unfit on seven different grounds. The court also found that termination of the respondent's parental rights was in the child's best interests after consideration of the petitioners' testimony and the report of the guardian *ad litem*.

¶ 16 On September 26, 2019, the respondent, through newly retained counsel, filed the section 2-1401 petition at issue in this appeal. He alleged that he did not receive notice of the final hearing and that he was unable to attend because he was incarcerated at the time. He further alleged that he was not represented by counsel during the adoption proceedings. He requested that the court vacate both the order terminating his rights and the judgment of adoption. The petition was supported by an affidavit from the respondent. In the proof of service filed by the respondent, his attorney certified that the complaint was served on the Madison County State's Attorney's office.

¶ 17 In late December 2019 and early January 2020, the petitioners' attorney, Deborah Crouse Cobb, and the respondent's attorney, Phillip Baldwin, corresponded about the case by email. Printouts of their relevant emails are attached to later pleadings as exhibits. In a December 19

5

email, Cobb informed Baldwin that the petitioners had never been properly served. She wrote, "If you opt to fix this, my clients have authorized me to accept service and notice because they would prefer that no one come to their house to serve anything." She also informed Baldwin that during the adoption proceedings, the respondent's mother called the court clerk's office to inform the court that the respondent would be unable to attend the final hearing because he was then incarcerated in St. Louis County. According to Cobb, this phone call occurred on June 23, 2019, shortly after the court had set the matter for a final hearing on July 25, 2019. As stated earlier, the respondent did not request a continuance, and it is not clear on the record whether he attempted to make arrangements to participate in the hearing remotely.

¶ 18    In a subsequent email, Cobb sent Baldwin an authorization to accept process on behalf of the petitioners. On January 6, 2020, Baldwin emailed Cobb a copy of the complaint. In the body of the email, he stated, "Please find the attached documents above. I am sending these to you as you have agreed to accept service on behalf of [M.A.E.]"

¶ 19    In March 2020, the original trial judge, Judge Mengarelli, recused himself due to a conflict of interest with Baldwin's law firm. The case was reassigned to Judge Schuette.

¶ 20    The matter came for a status hearing on June 30, 2020. At that time, Judge Schuette granted the petitioners' oral motion to strike pleadings and dismiss the case due to a lack of proper service.

¶ 21    On July 2, 2020, the respondent refiled his section 2-1401 petition. The record contains a proof of service stating that a copy of the petition was hand-delivered to Cobb at her office and that a copy was mailed to the guardian *ad litem*. The proof of service was signed by attorney Baldwin.

¶ 22    On August 5, 2020, the petitioners filed a written motion to strike the respondent's pleading. In it, they alleged that in spite of the statement in the proof of service alleging hand

6

delivery, Cobb found the petition loose in her mailbox. It was not in a sealed envelope addressed to her and did not have postage affixed. The court granted the motion on August 19, 2020.

¶ 23    On September 8, 2020, the respondent filed a motion to reconsider that ruling. In it, he alleged that as follows:

> "On July 2, 2020[,] the Petition for Relief From Judgment was delivered to the Law Office of Deb Crouse Cobb at 515 West Main Street, Collinsville, Illinois[,] 62234. Current COVID19 regulations were in place and the office was subsequently locked up. Due to the unavailability of personal service[,] a copy of the documents were left in the office's drop box."

The respondent further alleged that he also emailed the documents to Cobb on January 6, 2020, and that the petitioners were aware that he was contesting the adoption.

¶ 24    The matter came for a hearing in April 2021, after numerous delays due to the Covid pandemic. At that time, the parties agreed to present arguments on the respondent's motion through written memoranda.

¶ 25    In the respondent's written argument, filed in June 2021, he raised the same arguments he raises in this appeal—that he effectuated proper service in January and July of 2020, that the petitioners waived proper service by entering a general appearance in the matter, and that the court should allow him to cure any defect rather than dismissing his section 2-1401 petition with prejudice on procedural grounds. In the memorandum's "statement of facts," he alleged that the petitioners' attorney, Cobb, was personally served by special process server John Apperson on July 2, 2020, an allegation at odds with his previous allegation that Apperson left a copy in Cobb's mailbox upon finding her office locked. However, in support of his argument that he should be given additional time to effectuate proper service, he again asserted that Apperson arrived at

7

Cobb's office only to find the door locked due to Covid restrictions. He further alleged that after finding the office locked and "ascertaining the presence of individuals inside, Server Apperson proceeded to serve his documents in accordance with statute." He did not specify what Apperson did to serve the documents, however.

¶ 26   In support of the respondent's contention that the petitioners waived proper service and voluntarily submitted to the court's jurisdiction, he alleged that their attorney argued the merits of the underlying adoption proceedings at an April 2021 status hearing. He did not allege that he made any other attempts to provide proper service.

¶ 27   Attached to the respondent's memorandum was a copy of a signed statement by process server Apperson stating that he hand-delivered the petition to Deborah Crouse Cobb and charging attorney Baldwin $50 for this service. Also attached were copies of financial records and money order receipts showing that the respondent had paid $243 per month in child support between January 2014 and December 2016, and that he paid $365 per month beginning in June 2019. As we explained earlier, the merits of the underlying adoption proceeding are not before this court. However, it is worth noting that these records are consistent with the testimony that the respondent did not pay child support for two years prior to the filing of the adoption petition.

¶ 28   On July 29, 2021, the petitioners filed their memorandum in opposition to the motion to reconsider. They alleged that during the adoption proceedings, the respondent participated in a case management conference by telephone. They stated that at that conference, the court offered to appoint counsel for the respondent, but that he declined the offer, explaining that he preferred to retain an attorney of his own choice. The petitioners further alleged that they became aware of the respondent's section 2-1401 petition when they were told about it by the Madison County State's Attorney's office. They argued that placing documents in a mailbox does not constitute

8

proper service, and that they did not waive proper service because they did not present arguments on the merits at any time during the section 2-1401 proceedings.

¶ 29 On August 27, 2021, the court denied the respondent's motion to reconsider. The respondent then filed this timely appeal.

¶ 30                                    II. ANALYSIS

¶ 31 Before considering the merits of this appeal, we note that the petitioners did not file a brief. The record in this case is simple, and we find that the issues can be resolved easily without the aid of an appellee's brief. We will therefore address the respondent's claims on their merits. See *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 32 As stated previously, the respondent contends that (1) he was denied due process during the adoption proceedings; (2) the court's findings of unfitness in the adoption proceedings were against the manifest weight of the evidence; and (3) the court erred in dismissing his section 2-1401 petition. As we explained earlier, however, only the third argument is before us because the respondent did not file a timely appeal in the adoption proceedings.

¶ 33 The respondent argues that the court erred in dismissing his section 2-1401 petition because (1) he provided proper service at least twice—by email on January 6, 2020, and by personal service on July 2, 2020; (2) the petitioners waived any objection to improper service by entering a general appearance in the proceedings; and (3) alternatively, the court should have allowed him to cure any defects rather than dismissing his petition outright. We reject each of these contentions.

¶ 34 The issues before us involve questions of whether the petitioners were subject to the personal jurisdiction of the court. Personal jurisdiction over a party may be established either through service of process that complies with statutory requirements or through the party's

9

voluntary submission to the court's jurisdiction. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18. Whether a court has obtained jurisdiction over a party through either of these avenues is a question of law subject to *de novo* review. *Witcher v. State Farm Fire & Casualty Co.*, 2018 IL App (5th) 170001, ¶ 13; see also *KSAC Corp. v. Recycle Free, Inc.*, 364 Ill. App. 3d 593, 594 (2006) (stating that a *de novo* standard of review applies when a trial court dismisses a complaint on jurisdictional grounds without a hearing).

¶ 35    Proper service of process in this case is governed by section 2-203 of the Code of Civil Procedure (735 ILCS 5/2-203 (West 2018)) and Illinois Supreme Court Rules 105 and 106 (Ill. S. Ct. R. 105 (eff. Jan. 1, 2018); R. 106 (eff. Aug. 1, 1985)). Section 2-203 applies generally to service of process in civil suits. The statute mandates that, unless "otherwise expressly provided," process must be served on an individual either by leaving a copy of the summons with that individual personally or by leaving a copy with a family member who is at least 13 years old at the residence of the individual to be served. 735 ILCS 5/2-203(a)(1), (2) (West 2018). If the summons is left with a family member at the defendant's residence, the process server must inform the family member of the contents of the summons and must also mail another copy of the summons to the defendant in a sealed envelope addressed to the defendant with postage fully paid. *Id.* § 2-203(a)(2). Rules 105 and 106 provide an additional method for service of process in proceedings on section 2-1401 petitions. Pursuant to these rules, the summons may be served by "prepaid certified or registered mail addressed to the party, return receipt requested." Ill. S. Ct. R. 105(b)(2) (eff. Jan. 1, 2018); see also Ill. S. Ct. R. 106 (eff. Aug. 1, 1985) (providing that notice of the filing of a section 2-1401 petition must be served using the methods set forth in Rule 105 "for the giving of notice of additional relief to parties in default"). Service by publication is also permitted under circumstances not relevant here. See 735 ILCS 5/2-206 (West 2018); Ill. S. Ct. R. 105(b)(3) (eff.

Jan. 1, 2018). With these requirements in mind, we turn our attention to the respondent's contention that he provided proper service of process to the petitioners' attorney, who was authorized to accept process on their behalf.

¶ 36    The respondent first argues that he properly served his section 2-1401 petition on the petitioners via their attorney, Cobb, by email on January 6, 2020. He argues that service by email is authorized under Supreme Court Rule 11. Although Rule 11 does provide that pleadings may be served by email, the rule explicitly governs only the service of "documents other than process and complaint." Ill. S. Ct. R. 11 (eff. July 1, 2017). As we have just discussed, the relevant statutory provisions and supreme court rules do not authorize service of process by email. Thus, we reject the respondent's argument that service on Cobb by email was proper.

¶ 37    He next argues that he properly served the complaint on Cobb at her office on July 2, 2020. He points out that the record contains a proof of service certifying that a copy of the petition was served on Cobb "by hand delivery." He argues that, in the face of this documentary evidence, Cobb's allegation to the contrary was inadequate to prove that she was not properly served. See *Orthopedic & Reconstructive Surgery, S.C. v. Kezelis*, 146 Ill. App. 3d 227, 231-32 (1986). We reject this contention.

¶ 38    The certificate or affidavit of a process server constitutes evidence that process was served. 735 ILCS 5/2-203(a) (West 2018); *Mayfield v. Smith*, 2019 IL App (1st) 181899, ¶ 31; *In re J.B.*, 2018 IL App (1st) 173096, ¶ 33. Filing a certificate creates a presumption that a party was properly served. *J.B.*, 2018 IL App (1st) 173096, ¶ 33. This presumption cannot be overcome without evidence to the contrary in the form of testimony or an affidavit. *Mayfield*, 2019 IL App (1st) 181899, ¶ 31; *J.B.*, 2018 IL App (1st) 173096, ¶ 34. A mere assertion that a party did not receive

11

service is not sufficient to overcome the presumption. See *J.B.*, 2018 IL App (1st) 173096, ¶ 37; *Kezelis*, 146 Ill. App. 3d at 231-32.

¶ 39    Ordinarily, a court faced with competing assertions and documentary evidence on the issue of proper service should hold an evidentiary hearing to resolve this factual question. See *Mayfield*, 2019 IL App (1st) 181899, ¶ 32. Here, there was a dearth of even documentary evidence available upon which the court could base its decision. Although the record contains a proof of service purporting to certify that "the undersigned" served the complaint on Cobb by hand delivery, it was signed by Baldwin and did not even name the process server. Likewise, while the petitioners alleged that Cobb was not personally served, they did not provide any affidavits in support of their allegation. See *J.B.*, 2018 IL App (1st) 173096, ¶ 37 (rejecting a respondent's claim that she was not served where she provided no affidavit or testimony in support of her claim). However, the respondent acknowledged in his motion to reconsider that his process server left a copy of the complaint in Cobb's mailbox. This constitutes a judicial admission that is binding on the respondent.

¶ 40    A statement of fact in a pleading constitutes a judicial admission that is binding on the party who made it. The party cannot create a disputed question of fact by subsequently contradicting a judicial admission. *Bank of New York Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 23. Judicial admissions operate as concessions or stipulations, with the effect of taking the facts admitted out of controversy. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 557 (2005). We note that a factual admission in an unverified pleading, such as the respondent's motion, can lose its preclusive effect if the unverified pleading is superseded by an amended pleading. However, the admission remains binding as a judicial admission unless and until the party files an amended pleading. *Id.* at 559. Here, no amended pleading was filed. Thus, the admission is binding on the

12

respondent. In the face of the respondent's admission that his process server left the complaint in Cobb's mailbox, we must reject his argument that he provided proper service.

¶ 41 The respondent next argues that the petitioners waived any objections by entering a general appearance in the matter. As he correctly contends, a party cannot object to the court's personal jurisdiction, including on grounds of insufficient service of process, if that party voluntarily submits to the court's jurisdiction. As such, participation in the proceedings can waive objections to personal jurisdiction. See *In re Estate of Ahern*, 359 Ill. App. 3d 805, 812 (2005). Here, the respondent asserts that counsel for the petitioners appeared before the court at multiple case management conferences and at a motion hearing without entering a special and limited appearance. He further asserts that their attorney addressed the merits of the underlying adoption proceedings at an April 2021 status hearing. We are not convinced that the petitioners waived their objection.

¶ 42 Prior to 2000, the only way a party could appear in court to challenge personal jurisdiction was by filing a special and limited appearance. *KSAC Corp.*, 364 Ill. App. 3d at 594 (citing 735 ILCS 5/2-301(a) (West 1998)). However, a statutory amendment eliminated the distinction between general and special appearances. See *Mitchell*, 2014 IL 116311, ¶¶ 30-31; *KSAC Corp.*, 364 Ill. App. 3d at 596. As amended, the pertinent statute—section 2-301 of the Code of Civil Procedure—provides that a party may object to personal jurisdiction on the basis of insufficient service of process by filing a motion to dismiss or a motion to quash service. 735 ILCS 5/2-301(a) (West 2018). However, a party waives any objection by "filing any other pleading or motion prior to the filing of a motion objecting to the court's jurisdiction over the party's person" with certain exceptions not relevant here. *Id.* § 2-301(a-6); see also *In re Estate of Mirabella S.*, 2018 IL App

13

(3d) 180414, ¶ 11; *KSAC Corp.*, 364 Ill. App. 3d at 596 (quoting *Larochelle v. Allamian*, 361 Ill. App. 3d 217, 220 (2005)).

¶ 43   Illinois courts, including our supreme court, have held that a party can also waive objections to personal jurisdiction by filing a written appearance and appearing in court to make substantive arguments on the merits without first objecting to personal jurisdiction. See *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶¶ 8, 25 (finding waiver where the party appeared at a hearing and requested relief other than the dismissal of the proceedings on jurisdictional grounds); *King v. Find-a-Way Shipping, LLC*, 2020 IL App (1st) 191307, ¶ 20 (finding waiver where the party filed a general appearance and an answer on the same date it filed a motion objecting to personal jurisdiction); *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019, ¶ 90 (explaining that "[w]aiver of personal jurisdiction occurs when a party files a general appearance in a case without immediately objecting to personal jurisdiction" and that appearing in court without objecting to personal jurisdiction is submitting to the court's jurisdiction). It is also worth noting that some courts have continued to make a distinction between general and special appearances in spite of the statutory amendment. See *KSAC Corp.*, 364 Ill. App. 3d at 595-96 (discussing *Ahern*, 359 Ill. App. 3d at 812, and *Haubner v. Abercrombie & Kent International, Inc.*, 351 Ill. App. 3d 112, 117-18 (2004)).

¶ 44   Here, the petitioners never filed a written appearance in the section 2-1401 proceedings, and the only pleading they filed was a motion to strike the respondent's petition due to lack of personal jurisdiction on the grounds of insufficient service of process. That motion, while not labeled a motion to dismiss, had the effect of requesting dismissal with prejudice. Thus, under the express terms of the statute, the petitioners did not waive their objection to personal jurisdiction

14

because they did not file any motions or responsive pleadings prior to challenging jurisdiction. See 735 ILCS 5/2-301(a-6) (West 2018).

¶ 45 Moreover, because the only matter ever set for argument before the court was the petitioners' objection to personal jurisdiction based on inadequate service of process, the appearance of the petitioners and/or their attorney at case management hearings and the hearing on that motion cannot be construed as a general appearance or a waiver of their objection. See *Farthing v. Natural Gas Pipeline Co.*, 74 Ill. App. 3d 958, 964 (1979) (explaining that actions recognizing a case as being in court constitute general appearances *unless* they are taken "for the sole purpose of objecting to the jurisdiction" (citing *Lord v. Hubert*, 12 Ill. 2d 83, 87 (1957))). Although the respondent asserts that the petitioners' attorney addressed the merits of the underlying adoption case at the April 2021 hearing, the record contains no bystander's report or transcript from this hearing. The respondent, as appellant, is responsible for providing us with a sufficiently complete record to resolve his claims, and any doubts arising from gaps in that record must be construed against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). For these reasons, we reject the respondent's contention that the petitioners waived their objection.

¶ 46 Finally, the respondent argues that the court should have allowed him to cure the defect in his service of process rather than dismissing his complaint with prejudice. We disagree.

¶ 47 Before addressing the respondent's argument, it is worth reiterating that the court initially allowed the respondent to refile his case after dismissing it for failure to provide proper service of process on June 30, 2020. In their subsequent motion to strike the refiled section 2-1401 petition, the petitioners asserted that the one-year statute of limitations under the Adoption Act (750 ILCS 50/20b (West 2018)) had passed, and that it was therefore "too late" for the respondent to cure the defects in his service of process. On appeal, the respondent argues that although the petitioners'

15

motion did not explicitly cite or refer to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), their argument that he should not be given more time to properly serve them appears to be based on that rule. We agree that the court's decision should be analyzed under Rule 103(b).

¶ 48    Rule 103(b) provides that a court may dismiss a case if the plaintiff has failed to exercise reasonable diligence to effectuate service of process. If the lack of due diligence occurs before the applicable statute of limitations expires, dismissal is without prejudice. After the statute of limitations has expired, however, "the dismissal shall be with prejudice." Ill. S. Ct. R. 103(b) (eff. July 1, 2007). We note that, although we have referred to the parties throughout this case by their designations in the underlying adoption proceedings, in the section 2-1401 proceedings, the respondent is the plaintiff, and the petitioners are the defendants.

¶ 49    The purpose of Rule 103(b) is to protect a defendant from unnecessary delay and to prevent a plaintiff from getting around a statute of limitations by filing suit before the limitations period expires and then waiting to serve process until the plaintiff is ready to proceed with the litigation. *Christian v. Lincoln Automotive Co.*, 403 Ill. App. 3d 1038, 1042 (2010). However, public policy generally favors resolution of disputes on their merits, and dismissal with prejudice pursuant to the rule "is considered a harsh penalty." *Id.*

¶ 50    Before the trial court, the plaintiff bears the burden of demonstrating reasonable diligence in attempting to serve process. The plaintiff "must provide a reasonable explanation for any apparent lack of diligence." *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 21. In determining whether a plaintiff has met this burden, courts apply an objective standard. *Id.* ¶ 22. Relevant factors include: (1) the length of time that elapsed before process was served; (2) the actions of the plaintiff in attempting to serve process; (3) the plaintiff's knowledge of the defendant's whereabouts; (4) how easy or difficult it would have been to ascertain the defendant's

16

whereabouts; (5) whether the defendant had actual knowledge of the suit; (6) any special circumstances that impeded the plaintiff's efforts to serve process; and (7) actual service. *Id.* This is a fact-sensitive inquiry. *Id.* We review the trial court's decision for an abuse of discretion. *Id.* ¶ 20.

¶ 51   Considering the first factor—the time it took to provide proper service of process after the suit was filed—in this case, more than 10 months elapsed between the date on which the respondent initially filed his section 2-1401 petition (September 26, 2019) and the date on which the petitioners filed their written motion asking the court to strike his petition without leave to refile it (August 5, 2020). At that point, the respondent still had not provided the petitioners with effective service of process. Although Rule 103(b) does not contain a specific time limit (*Kramer*, 2021 IL App (5th) 200026, ¶ 25), a delay of five to seven months is generally considered sufficient "to make a *prima facie* showing of failure to exercise reasonable diligence" (*Verploegh v. Gagliano*, 396 Ill. App. 3d 1041, 1045 (2009)). This factor thus weighs in favor of the court's decision to dismiss the case with prejudice.

¶ 52   We turn our attention to the next factor—the actions of the plaintiff. Here, the respondent made three attempts to serve process during the 10-month period at issue. In his first attempt, he served process on the Madison County State's Attorney's office instead of on the petitioners. In his second and third attempts, he directed service of process at the petitioners' attorney, who was authorized to accept process on their behalf, but he did not comply with the requirements set forth in the applicable statutes and supreme court rules. The respondent has not alleged, much less provided any evidence, that he made any other attempts at proper service. This factor likewise supports the court's decision.

17

¶ 53    The respondent acknowledges that the next two factors—his knowledge of the petitioners' whereabouts and the ease with which he could have ascertained this information—favor the court's decision to dismiss his case. As he acknowledges, he knew the location of their attorney's office.

¶ 54    We agree with the respondent that the next factor—the defendants' actual knowledge of the suit—weighs against dismissal. As the respondent correctly points out, the petitioners were aware that he had filed a section 2-1401 petition.

¶ 55    The next factor to consider is any special circumstances that impeded the respondent's efforts to effectuate proper service of process. He argues that the Covid pandemic frustrated his efforts. While the pandemic obviously complicated any effort at in-person service beginning in March 2020, as we have previously discussed, service of process by registered or certified mail is also proper for a section 2-1401 petition. Ill. S. Ct. R. 105(b)(2) (eff. Jan. 1, 2018); R. 106 (eff. Aug. 1, 1985). Moreover, the respondent filed his petition in September 2019, six months before the pandemic began.

¶ 56    The final factor—actual service of process—typically addresses the ease with which service is eventually effectuated. See, *e.g.*, *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 381 (1990); *Kramer*, 2021 IL App (5th) 200026, ¶ 27. Here, proper service was never effectuated, so this factor is not particularly helpful. Considering all relevant circumstances and balancing the relevant factors, we can find no abuse of the trial court's discretion.

¶ 57                                III. CONCLUSION

¶ 58    For the foregoing reasons, we affirm the order of the trial court striking the respondent's pleadings and dismissing his petition for relief from judgment with prejudice.


¶ 59    Affirmed.

18